**HONG–YEE CHIU, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 336–79C.**

United States Claims Court.

Aug. 2, 1984.

Neil B. Kabatchnick, Washington, D.C., for plaintiff. Irving Kator, Washington, D.C., of counsel.

Alvin A. Schall, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. George Beasley III, Washington, D.C., of counsel.

## OPINION

YANNELLO, Judge.

Currently before this court is plaintiff's Application for Fees and Expenses, as amended, and defendant's opposition thereto. The facts are not in dispute and are summarized briefly below. They present questions of law, including the applicability of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1982), and the Back Pay Act, 5 U.S.C. §§ 1101, 5596, 7701, and 7703, as amended by the Civil Service Reform Act of 1978, Pub.L. 95–454, §§ 205, 702, 92 Stat. 1111, 1139 (1978).

### Facts

Plaintiff was employed as a space scientist (GS–14 and 15) with the National Aeronautics and Space Administration (NASA)

from August 15, 1963 to January 20, 1978. His post of duty was at the Goddard Institute for Space Studies (GISS) in New York City, a part of the Goddard Space Flight Center (GSFC). On January 20, 1978, plaintiff was separated from his position allegedly as part of a reduction-in-force (RIF) undertaken by GSFC.

Plaintiff appealed his separation to the Federal Employee Appeals Authority (FEAA) of the Civil Service Commission. Under the procedures then applicable, plaintiff appeared, testified, and introduced the testimony of a former co-worker. *See* FPM Ch. 722, Subch. 3–1d (1976); FPM Ch. 772, Subch. 3–2(i) (1978). It is unclear whether the agency was represented at that presentation, but it is clear that the presentation did not take the form of an evidentiary hearing and did not include any formal cross-questioning.

In connection with his appeal to the FEAA, plaintiff contended that the RIF action was not undertaken for bona fide reasons, but was undertaken for improper motives and as a result of personal animus against plaintiff. Plaintiff presented allegations of certain incidents involving Dr. Jastrow, his supervisor at GISS. Plaintiff pointed to an incident concerning the preparation of Dr. Jastrow's book and further contended that Dr. Jastrow told him that GISS could no longer support the work that he was doing and cut off his travel funds.

In November 1978, the FEAA upheld the personnel action, finding that the plaintiff had failed to make non-frivolous allegations. The FEAA found that the incident relating to Dr. Jastrow's book, occurring several years prior to the RIF, could not be found to have influenced the RIF, and that any statements concerning support for plaintiff's work merely reflected the agency's conclusion that plaintiff's position was simply no longer needed to accomplish the agency's objectives.

Plaintiff appealed this decision to the Merit Systems Protection Board (MSPB) which, in a decision on September 6, 1979, denied plaintiff's application for reconsideration.

A petition was filed in the United States Court of Claims on July 27, 1979, and amended on November 7, 1979. Defendant filed a Motion for Summary Judgment in September 1980, which was heard by the Appellate Division (now the United States Court of Appeals for the Federal Circuit).

After the filing of this motion, and in connection therewith, the parties, by agreement, conducted depositions of Dr. Jastrow and other former colleagues of plaintiff.

In support of its motion, and in response to plaintiff's cross-motion, defendant argued that:

1. The decision of the FEAA was entitled to finality unless arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

2. The court, in examining the contentions of plaintiff, was limited to the record assembled by the FEAA.

3. Even as supplemented by the depositions taken, plaintiff's claims did not rise above the frivolous. This includes the argument that even if personal conflict existed between Dr. Jastrow and plaintiff, this would not invalidate an otherwise legitimate managerial decision to abolish plaintiff's position in a RIF.

4. Alternatively, if the court determined that the depositions did present non-frivolous allegations, the matter should be remanded to the MSPB rather than being decided by the court.

The Court of Claims issued its decision on December 15, 1981, and held that the deposition material was not properly before it for consideration in connection with the cross-motions. The court noted that it was not able to agree with defendant's contention, *i.e.*, it was "unable to say that [the deposition] fails to raise other than frivolous issues." Nor did the court agree with plaintiff, *i.e.*, it did not say that the depositions did raise issues which were non-frivolous. Instead, the court construed the evi-

dence of the depositions as tantamount to "newly discovered," and remanded the matter to the MSPB.[1]

In so doing, the court provided that progress reports be made by plaintiff at 90-day intervals and suspended further proceedings. The cross-motions were denied without prejudice to their renewal in the event that the MSPB did not dispose of the case.

In April 1982, the MSPB ruled in favor of plaintiff, concluding that the RIF action pursuant to which plaintiff was separated was not bona fide but was taken for reasons personal to him. The MSPB reversed the findings of the FEAA and ordered NASA to cancel plaintiff's separation. The agency requested reconsideration, which was denied by the MSPB. Thereafter plaintiff was reinstated by the agency and he received appropriate back pay.

On September 23, 1982, the MSPB decision was filed with the court, and thereafter the parties agreed that the MSPB decision afforded a satisfactory basis for the resolution of the case. On November 30, 1982, this court, pursuant to the parties' stipulation, dismissed the case with prejudice, except as to any application by plaintiff for fees, costs, and expenses under the EAJA.

Plaintiff's application seeks fees for Mr. Kabatchnick for 302.75 hours (at the maximum allowable $75.00 per hour) for a total of $22,556.25, and fees for Mr. Kator for 158.5 hours (at $75.00 per hour) totalling $11,887.50. Of these totals, defendant has apportioned 161.75 hours for Mr. Kabatchnick and 107.6 hours for Mr. Kator in connection with proceedings in the Court of Claims; the remainder of their time was spent in connection with either FEAA or MSPB proceedings.

In addition, plaintiff claims expenses of $6,213.85. Some items, as correctly noted by defendant, might be considered to be "costs" under the EAJA, 28 U.S.C. § 2412(a), since that statute incorporates the definition of 28 U.S.C. § 1920, to-wit:

(1) Fees of clerk and marshall (here including a filing fee of $10);

(2) Fees of court reporter for any part of transcript necessarily obtained for use in the case (here including transcript of depositions of $1,318.50);

(3) Fees and disbursements for printing and witnesses (here including photocopying of $1,502.20 and witness expenses of $178.88).

Inasmuch as the court's entry of judgment of November 30, 1982 reserved both the question of costs and expenses, plaintiff's all-inclusive listing is of no moment.

## DISCUSSION

### A. Government Duty to Investigate Generally

■ The plaintiff addresses one argument to the overall history of this case which warrants discussion at the outset. Counsel urges that plaintiff's travails, from January 1978 through the court's decision of 1982, are due to a failure of the agency

---

1. The court noted the issues which were presented and included the following descriptions:

"It is clear at least that plaintiff's supervisor was dissatisfied with plaintiff's work. This is a case of a decision by an agency, engaged largely in scientific research, to cease pursuing a project on the ground that funds are not unlimited and other projects would tend more to further the agency mission. There was no drastic or any cut in agency funds such as we usually associate with RIF actions. The project had occupied the time of but a single scientist, the plaintiff. The conclusion was drawn to terminate his employment, and his alone, as other uses of his talents were not immediately perceived as fundable. A feeling that the project was not a worthy contender for financial support, because it was not getting anywhere, and a feeling that the incumbent scientist personally was not producing, seemingly were inextricably mixed, and we have no doubt that supervisors trained in science rather than the law or personnel administration, are often unable to differentiate clearly and sharply between one feeling and the other. Where the scientist [plaintiff] as here, insists on enforcing his procedural rights, and they are different depending on whether the action affecting him is perceived as a RIF or an adverse action, we see no escape from *the necessity for a most careful and sensitive study of the case by the agency that administers the government's personnel program.*" [Emphasis supplied.]

to thoroughly investigate his allegations of animus from the very outset. The court does not agree insofar as such allegations may relate to recovery of attorneys' fees and expenses.

While the court unquestionably supports full and complete investigation of all allegations raised by plaintiffs, and settlement wherever appropriate, at the same time the court believes, as a matter of general policy, that plaintiffs should not be encouraged, through awards of attorneys' fees when successful, to engage in fishing expeditions.

The plaintiff cannot be heard to complain of a government failure to investigate and make plaintiff's case for him so long as the government does address and satisfy itself as to the merits of those issues which are actually raised by the plaintiff. The court should consider the substantial justification of the government's position before it only in the context of the issues actually raised. In the instant case the allegation of animus was extremely broad and only three specific instances were recited. These three circumstances were fully addressed in the FEAA proceedings.

The proceedings before the FEAA properly addressed such issues (albeit frivolous issues) as plaintiff himself presented, insofar as procedures were then required, and to this extent the matters raised were fully addressed by the agency which, like the FEAA, may well have found no basis for relief.[2] There is no indication whatever that the plaintiff was in any way thwarted in his efforts to fully present his case. There is no evidence, and indeed no allegation, that plaintiff attempted to question Dr. Jastrow (on a voluntary basis, or without subpoena), in the same manner as plaintiff adduced the testimony of a former colleague, and that such attempts were in any way unavailing, thwarted or frustrated. *Cf. Reynolds v. United States*, 197 Ct.Cl. 199, 212, 454 F.2d 1368, 1375 (1972).

When litigation was instituted in this court, defendant responded based, at least in part, on a litigation report presumably furnished by the agency as suggested by 28 U.S.C. § 520, as noted by plaintiff. In undertaking to defend an action, the government should, of course, address all specific allegations by plaintiff, and should assure itself of a full and complete investigation with respect thereto. The justification of defendant's position will be evaluated taking into account its response to the plaintiff's specific allegations and what the results of the government's investigation were or should have been. *Cf. St. Paul Fire & Marine Ins. Co. v. United States*, 4 Cl.Ct. 762, 769 (1984) (award under 28 U.S.C. § 2412(b) for bad faith allegations). In this respect too, defendant properly responded to the allegations actually raised by plaintiff which, as noted above, were found to be without substance.

The government need not, however, expand its investigation beyond plaintiff's allegations so as to discover and supply specifications suggested only by general or broad allegations of plaintiff. In short, the defendant need not make plaintiff's case. A defense to the specific allegations actually raised may be substantially justified notwithstanding the failure of the government to conduct investigations into matters beyond such allegations.

In this respect the government here addressed plaintiff's specific (but frivolous) allegations. Defendant did not go further, nor need it have, to discover if there were any possible circumstances which would support plaintiff's broad allegation of animus. In this respect, and as part of its burden of establishing support for its own allegations, the plaintiff was afforded every opportunity to develop and present its case, without interference or frustration by the government. It was in the course of this development (in the course of preparing its response to defendant's dispositive motion) that discovery was sought by,

---

**2.** That the procedures then required did not include full evidentiary type proceedings, with subpoena rights to enforce appearance of deponents or witnesses, is not a proper basis for assessing attorneys' fees.

granted to, and undertaken by plaintiff. It was this discovery which led to the depositions referred to above as the "newly discovered" evidence which was a turning point in the case. (Again, absent any showing to the contrary, it cannot be found that such avenues were previously ever denied to plaintiff or that the plaintiff's attempts to uncover such information were frustrated or thwarted).

Plaintiff would apparently urge that it is the burden of defendant to pursue such avenues of investigation and discovery and that, absent fulfilling such burden, defendant's position cannot be found to be substantially justified. So long as defendant addresses the assertions raised by plaintiff, and where there is no interference with any attempt by plaintiff to pursue equally available sources of information (albeit through voluntary channels rather than by subpoena) in support or furtherance of any assertions it wishes to make, such a contention cannot be adopted. In the circumstances here present, this court can find no error on the part of the agency in connection with the RIF action or the FEAA appeal or with either the agency or the Department of Justice in failing to develop earlier the evidence ultimately discovered by plaintiff in the court proceedings.

### B. The FEAA Proceedings

Before reviewing contentions concerning the substantial justification of the government in addressing and responding to the allegations raised by plaintiff in the FEAA proceedings, it is necessary to consider whether attorneys' fees are appropriate to such a proceeding in any event.

■ The defendant contends that the EAJA is applicable only to those proceedings which are adjudicatory or adversarial in nature; clearly, the FEAA proceedings were not.[3] Moreover, defendant argues that since the FEAA proceedings were devoted to review of a question of employee

"tenure" they, by definition, cannot constitute a proceeding for which attorneys' fees can be awarded. *See Hoska v. United States,* 694 F.2d 270, 273 (D.C.Cir.1982); *Olsen v. Department of Commerce, Census Bureau,* 735 F.2d 558, at 561 *et seq.* (Fed.Cir.1984). For the reasons set forth in defendant's brief, and discussed in the cases cited herein which need not be restated, we agree with defendant.

Plaintiff argues that the history of the EAJA as "remedial" legislation mandates a different result, and a result akin to that reached in *Premachandra v. Mitts,* 727 F.2d 717 (8th Cir.1984); *contra Lauritzen v. United States,* 736 F.2d 550 (9th Cir. 1984). Notwithstanding plaintiff's assertions to the contrary, this court believes that the Federal Circuit's opinion in *Olsen, supra,* which is binding precedent for this court, persuasively reasons otherwise and precludes the conclusion urged by plaintiff.

With respect to any award of attorneys' fees under the Back Pay Act, *supra,* it is noted that the decision of the FEAA was issued on November 16, 1978, and was thereafter appealed to the MSPB. The Back Pay Act amendments, effective in January 1979, allowing the award of attorneys' fees was specifically not made applicable to administrative proceedings then pending, or to any appeals therefrom. 5 U.S.C. § 1101, Savings Clause. Thus, the Back Pay Act cannot be found to support plaintiff's application here. The separation and FEAA proceedings (and appeals therefrom) took place prior to the effective date of the amendments to the Act. *See Nibali v. United States,* 225 Ct.Cl. 8, 634 F.2d 494 (1980). *See also, Nibali v. United States,* 218 Ct.Cl. 547, 589 F.2d 514 (1978); *Duvall v. United States,* 1 Cl.Ct. 711 (1983) (NETTESHEIM, J.).

■ Moreover, even were this court to find that consideration of the award of attorneys' fees is appropriate, we would decline to grant plaintiff's application inas-

---

**3.** Although plaintiff would contend otherwise, it is clear from the regulations in force prior to the Civil Service Reform Act of 1978, those proceedings were not evidentiary, adversarial or adjudicatory in nature. Indeed, during oral argument, plaintiff's counsel noted that the proceedings amounted to a mere oral presentation by plaintiff.

much as we find that an award of attorneys' fees would not be "warranted in the interest of justice," under the standards of the Back Pay Act. *See Olsen, supra.* The FEAA proceedings addressed plaintiff's contentions and found them to be frivolous. (As noted above, the government was in no way in error in not finding support for allegations which plaintiff did not raise but on which plaintiff might have prevailed).

### C. The Court of Claims Proceedings

■ The EAJA warrants an award of attorneys' fees in connection with the proceedings in the Court of Claims (to review the action of the FEAA and the denial of reconsideration by the MSPB) if the government's position in such proceedings is without substantial justification. *See Olsen* at 560 *et seq.* This court finds that the position of the defendant was substantially justified, as is discussed below.

The government addressed the issue of the frivolousness of the claims made by plaintiff before the FEAA and, in its dispositive motion, urged an appropriate standard of review by the Court of Claims. In this, defendant's position was substantially justified.

Plaintiff pursued discovery in connection with the court proceedings and, apparently for the first time, sought to depose and interrogate Dr. Jastrow and other former colleagues. (See the discussion at the outset of this section of this opinion). The result of these depositions was the unearthing of "newly discovered" evidence. Faced with that evidence, defendant again noted that, in addition to its substantive arguments concerning whether the depositions revealed evidence of non-frivolous claims, the proper forum for consideration of such a matter was the MSPB. The court agreed, and in this connection the defendant's position was substantially justified.

Immediately following the conclusion of the MSPB proceedings, and the agency's request for reconsideration thereof, the agency reinstated plaintiff and remitted appropriate back pay. The defendant also stipulated to the dismissal of this case.

Here too, defendant acted with all due dispatch and expedition, and its position was substantially justified.

Thus, this court can find no basis upon which to grant an award for attorneys' fees and expenses in connection with the proceedings before the Court of Claims. *See* 28 U.S.C. § 2412(d)(1)(A).

Inasmuch as the judgment of the Court of Claims left open the question of an award of costs, and inasmuch as plaintiff was the prevailing party, it is found that an award of costs is appropriate pursuant to 28 U.S.C. § 2412(a). *See* Rule 54(d) as to bills of cost which are to be submitted to the Clerk of the Court.

### D. The MSPB Proceedings On Remand

Here too, before addressing the question of the substantial justification of the government's position, there are certain threshold issues presented which should be addressed at the outset.

Defendant contends that, for the same reasons set forth above in connection with the FEAA proceedings, plaintiff is not entitled to an award of attorneys' fees with respect to the MSPB proceedings. Those arguments are: (1) the proceedings relate to "tenure" of an employee for which fees are not appropriate; (2) if any award were appropriate relating to the MSPB proceedings, any application should be directed to that forum and not to this court; and (3) the MSPB proceedings were part of an appeal from the 1978 RIF which was the subject of the 1978 FEAA decision and thus any award under the Back Pay Act is precluded by the Savings Clause, *supra.*

■ With respect to the first argument, it is now established that the MSPB would not have had the authority to award fees in a "tenure-related" proceeding and that this court similarly could not render such an award relating to the MSPB proceedings under the EAJA. *Olsen* at 561 *et seq.* There remains for consideration plaintiff's entitlement to fees under the Back Pay Act as amended.

■ With respect to the second argument, it is equally established that regulations require that applications for fees be first presented to the board before they are presented to a court, where the party has prevailed before the board. *Olsen* at 562 *et seq.* This regulation, however, is most reasonably related to a situation where the appeal from the personnel action traverses the administrative processes, culminating in a successful decision by the MSPB from which the plaintiff-employee need seek no further appeal. This was not the situation in the instant case.

The MSPB, on appeal from the FEAA decision, denied reconsideration of that decision. In short, plaintiff did not prevail, and therefore instituted suit in the Court of Claims. In such a circumstance, plaintiff need not first submit its fee application to the MSPB. *Olsen* at 562.

In the instant case, it might be argued that plaintiff did not prevail before the court because plaintiff's petition was dismissed with prejudice. This dismissal was based on the stipulation of the parties. The foundation of the stipulation was reinstatement of plaintiff and remittance of back pay pursuant to the MSPB decision. That decision resulted not from a normal progression to the MSPB from lower administrative channels, but from a remand by the court, as part of the court proceedings, occasioned by evidence "newly discovered" in said court proceedings. The court proceedings were suspended, but not dismissed, pending the outcome of the MSPB consideration on remand.

Under the circumstances here present, and because the MSPB proceedings in issue were those conducted pursuant to a remand by the Court of Claims and not arising out of the pursuit of the normal progression of administrative proceedings prior to and without resort to the court, this court sees no reason to remand the matter of attorneys' fees to the MSPB rather than deciding plaintiff's entitlement to an award here. *Cf. Olsen, supra.*[4]

■ Defendant's third argument relates to the timeliness of an award of attorneys' fees under the Back Pay Act. For the reasons stated above in connection with the FEAA proceedings, this court concludes that the MSPB proceedings on remand were a part of the Court of Claims proceedings in an appeal from an FEAA decision predating the effective date of the amendments to the Back Pay Act. The entire appeal proceedings related to decisions pending or issued prior to the effective date of the amendments and an award of fees is precluded by the Savings Clause.

■ Even were this court to feel that consideration of an award would be appropriate and timely, we would not find that the granting of an award would be in the interests of justice. As the court noted in the remand to the MSPB, the questions of the feelings on the part of Dr. Jastrow and the assessment of the overall viability of plaintiff's continued personal involvement with GISS may be inextricably entwined and require careful and sensitive study. It is not unreasonable for defendant to urge, as it did, that wholly apart from any animus on the part of Dr. Jastrow, the managerial decision to discontinue plaintiff's position was nonetheless appropriately undertaken.

Moreover, given the existence of the depositions resulting from the Court of Claims proceedings, the record before the MSPB was not augmented further, and no prolonged proceedings were instituted. Rather, the government presented its construction of those depositions (as not raising other than frivolous issues) and urged its position as to the propriety of the management decision as outlined above.

Under these circumstances we cannot find that the government proceeded unrea-

---

4. Following the filing of the MSPB's opinion in September 1982, this case was assigned to the Claims Court (rather than to the Federal Circuit) pursuant to the Federal Courts Improvement Act of 1982 Pub.L. 97–164, effective October 1, 1982. The suspension of proceedings during the remand was vacated by virtue of plaintiff's notice of October 25, 1982, and the parties' stipulation and application under the EAJA was filed thereafter.

sonably or that the interests of justice warrant an award of attorneys' fees with respect to the proceedings before the MSPB on remand.

### CONCLUSION OF LAW

For the reasons stated above, it is concluded that the plaintiff is entitled to an award of costs. *See* Rule 54(d).

Plaintiff is not entitled to recover attorneys' fees or expenses pursuant to either the EAJA or the Back Pay Act with respect to either the FEAA proceedings, the proceedings before the Court of Claims (and later the Claims Court), or the MSPB proceedings on remand from the court and, accordingly, to this extent, plaintiff's application should be denied.