**HONG–YEE CHIU, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 336–79C.

United States Claims Court.

Nov. 8, 1989.

Irving Kator, Washington, D.C., for plaintiff.

George M. Beasley, III, with whom were Acting Asst. Atty. Gen. Stuart E. Schiffer and David M. Cohen, Director, Washington, D.C., for defendant.

## OPINION and ORDER

ANDEWELT, Judge.

In a June 28, 1989, opinion and order, this court held that the underlying federal agency action challenged in this litigation was not "substantially justified" and, hence, that plaintiff was entitled to recover attorney's fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). *Chiu v. United States*, 17 Cl.Ct. 334 (1989). In response to that decision, plaintiff filed a proposed final accounting requesting $40,835.15 in attorney's fees, calculated at $107.56 per hour, plus $347.20 in costs. This opinion and order considers defendant's objections to plaintiff's request.

*Attorneys' Fees*

The EAJA provides, in pertinent part, that "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). In Section 2412(d)(2)(A), the term "fees and other expenses" is defined, as follows:

"[F]ees and other expenses" includes ... reasonable attorneys fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

Defendant's objections to plaintiff's request for attorney's fees fall into four general categories.

■ (1) Defendant contends that this court should view the EAJA-attorney fee phase of this litigation as separate from its consideration of the merits of the allegations set forth in the complaint, and that the court should not award attorney's fees for the EAJA phase because "the position of the United States" during that phase was substantially justified. But such a separation of the EAJA phase from the merits of the underlying action is not ap-

propriate for the reasons articulated by the Court of Appeals for the Second Circuit in *Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 708 (2d Cir. 1987). As noted above, pursuant to 28 U.S.C. § 2412(d)(1)(A), a court must grant attorneys' fees to qualified plaintiffs unless the "position of the United States was substantially justified." When Congress reenacted the EAJA in 1985, it amended the definition of the "position of the United States" to include "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). As explained in *Trichilo:*

> Severing separate parts of the litigation for purposes of determining the availability of counsel fees is inappropriate in view of this [1985] congressional mandate to look not at the government's litigation position, but rather at the underlying action that spawned the litigation in the first place. Were the government's litigation position the sole criterion for the award of fees, it might be justified to look at different phases of the litigation separately to determine whether the litigation position in each phase was "substantially justified". But since the litigation position is no longer the relevant criterion, there is no reason to divide up phases of the litigation for examination. In short, if the underlying agency action was not substantially justified, the victim of that unjustified action is entitled to all reasonable attorney's fees, including those incurred on the fee application.

823 F.2d at 708. *See also Cinciarelli v. Reagan,* 729 F.2d 801, 810 (D.C.Cir.1984); *Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1500–01, *vacated, reh'g denied,* 804 F.2d 1573 (11th Cir.1986).

(2) Defendant contends that this court should exercise its discretion and not award plaintiff any cost of living adjustment (COLA) to the $75 per hour maximum attorney fee rate permitted in 28 U.S.C. § 2412(d)(2)(A). Defendant's rationale is that the time period spent litigating the underlying merits of this action in this court was relatively short (two years and five months) and ended December 19, 1981,

soon after the enactment of the EAJA. *See, e.g., Oliveira v. United States,* 827 F.2d 735, 742–43 (Fed.Cir.1987). But for the reasons explained in detail below, the court concludes that increasing the $75 per hour statutory rate to account for inflation is appropriate herein and will further the congressional purpose behind the EAJA.

■ (3) Defendant requests that any COLA awarded herein reflect the increase in the cost of living for the entire United States rather than the increase for the Washington, D.C., area. Defendant contends that because this court has national jurisdiction and a national bar, COLAs should reflect national changes in the cost of living rather than local changes. But, as explained more fully below, the EAJA is intended to shift from plaintiffs to the United States the responsibility for payment of certain of plaintiffs' attorneys' fees. Local inflation statistics appear to have a more direct impact than national statistics on the costs attorneys face and, hence, the prices they charge. Herein, plaintiff and his counsel are both located in the Washington, D.C., area, and the increase in the cost of living in that area would appear to be a more accurate barometer than national inflation statistics in measuring the impact of inflation on plaintiff's attorney's fees. *See, e.g., Baker v. Bowen,* 839 F.2d 1075, 1084 (in which the court set a COLA based on the increase in the cost of living in the Dallas, Texas, area), *reh'g denied,* 848 F.2d 66 (5th Cir. 1988).

(4) Plaintiff seeks a 43.4% COLA to the $75 per hour statutory maximum rate (*i.e.,* $107.56 per hour) to account for the increase in the cost of living for the Washington, D.C., area from November 1980 to November 1988. Defendant objects to plaintiff's use of both the November 1980 starting date and the November 1988 ending date.

■ As to the November 1980 starting date, while the pertinent provisions of the EAJA were initially enacted on October 21, 1980, their effective date was not until October 1, 1981. Since Congress decided to

delay the effective date until October 1, 1981, it would appear Congress intended the $75 per hour maximum rate in Section 2412(d)(2)(A) to be effective on October 1, 1981, and any COLA to be based on increases in the cost of living occurring after that date. Consequently, plaintiff is not entitled to any adjustment for inflation prior to October 1, 1981. *See Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135 (1988) (in which this court calculated a COLA based on an October 1, 1981, starting date and rejected the contention that COLAs should not start to accrue prior to the 1985 reenactment of the EAJA).

Next, as to the November 1988 ending date, defendant disputes that the same ending date and, hence, the same COLA should apply to all attorney work performed during the course of a litigation. Instead, defendant contends that different COLAs should apply for work performed at different times, with the crucial ending date for calculating each COLA being the date the particular task was performed by the attorney. Hence, defendant contends that in setting a COLA, the court may only consider cost of living increases (*i.e.,* inflation) that occurred prior to an attorney's performance of the work and may not consider increases that occurred subsequent to the work performed, even if the increase occurred prior to the actual fee award. This interpretation would significantly decrease the award of attorney's fees herein because most of the legal work was performed long before November 1988.

But neither the statutory language nor its legislative history supports defendant's proposed interpretation of Section 2412(d). The statute, as set forth above, initially mandates that the attorney fee award be set based on an objective standard: "The amount of fees awarded ... shall be based upon prevailing market rates for the kind and quality of the services furnished." It then establishes a cap which potentially can limit the fee award to an amount below those prevailing market rates: ", except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." Hence, in creating this $75 per hour cap and permitting a cost of living adjustment to it, Section 2412(d)(2)(A) does not distinguish between pre- and post-performance increases in the cost of living and does not provide that the court may only consider the former in adjusting the cap. Section 2412(d)(2)(A) simply obliges the court, at the time it establishes the attorney fee award, to determine whether "an increase in the cost of living ... justifies a higher [than $75] fee." [1]

Increases in the cost of living that occur subsequent to the performance of an attorney's work potentially can "justif[y]" an increase in the $75 per hour statutory rate to the same extent as increases that occur prior to performance. In each case, the economic harm to a plaintiff is the same.

---

1. In *Wilkett v. I.C.C.,* 844 F.2d 867 (D.C.Cir. 1988), the Court of Appeals for the District of Columbia Circuit came to the contrary conclusion that a COLA can only cover increases in the cost of living that occurred prior to performance of the legal services. The court explained its rationale as follows:

In *Massachusetts Fair Share v. Law Enforcement Assistance Administration,* 776 F.2d 1066 (D.C.Cir.1985), we refused to allow a COLA to the $75 per hour cap for work performed in 1981, even though fees were not awarded until 1985. We are constrained to follow that holding.

*Id.* at 875 (citation omitted). The *Massachusetts Fair Share* court explained its decision, in pertinent part, as follows:

[Massachusetts Fair Share] asks us to adjust the fee award for its lead attorney upward by ten percent based on the quality of representation and cost-of-living increases. We agree that the attorneys' fee award should be adjusted to compensate for cost-of-living increases, but we limit that adjustment to five percent because some of the work in this case was performed almost contemporaneously with the effective date of EAJA, and is therefore adequately compensated by the pre-inflation rate of $75 per hour.

776 F.2d at 1069 (footnotes omitted). Thus, the court in *Massachusetts Fair Share* did not point to any particular language in the statute to support its interpretation or discuss any pertinent legislative history. For the reasons set forth in this decision, this court declines to follow the *Wilkett* approach.

Inflation reduces the value of a fixed sum of money; as the cost of living increases, the purchasing power of a fixed sum decreases. Thus, the value in real dollars of the $75 per hour attorney fee rate would decrease with inflation from the October 1, 1981, effective date of the EAJA through the time the attorney work was performed, and would then continue to decrease until the fees were actually paid. Since the reduction in the value of the $75 per hour rate does not cease at the time the work is performed, it is not apparent why the economic justification for increasing the $75 per hour rate to account for cost of living increases should necessarily cease at that time.

The legislative history apparently does not discuss this precise issue, but it does provide some information concerning Congress' intent when enacting the attorney fee provision in the EAJA. The traditional "American rule" is that each party to a litigation bear its own attorney's fees. Section 2412(d)(1)(A) creates an exception to the American rule. But pursuant to Section 2412(d)(2)(B), that exception applies only to a select group of plaintiffs, primarily individuals who do not exceed a specified maximum net worth, comparatively small businesses, and nonprofit institutions. In a 1980 report, the Committee on the Judiciary of the House of Representatives explained its rationale for recommending that qualifying plaintiffs receive attorneys' fees when they prevail in civil litigation against the United States. The Report states:

> For many citizens, the cost of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process....
>
> ... While the influence of the bureaucracy over all aspects of life has increased, the ability of most citizens to contest any unreasonable exercise of authority has decreased....
>
> ... The bill rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. ... Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their rights.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9–10 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4988–89.

Interpreting Section 2412(d)(2)(A) to permit a court to consider post-performance inflation in establishing a COLA would generally further this purpose. If the aim is to shift attorneys' fees from plaintiffs to the government so as to permit plaintiffs to "vindicate their rights," it would be appropriate, where consistent with the language of the EAJA, to adjust the award for inflation and thereby keep it constant in real dollars. If the $75 per hour rate is not adjusted for inflation between the time the work is performed and the time the award is made, the value in real dollars of the award would decrease during that period and plaintiff would end up bearing more of the actual economic costs associated with securing attorney representation and less would be shifted to the government.

Congress has frequently responded to the adverse economic effects of inflation on fixed sum payments by authorizing adjustments for inflation. *See, e.g.,* 42 U.S.C. §§ 415(i) and 1382f (social security); 5 U.S.C. § 8340(b) (civil service retirement). As explained above, such COLAs do not increase the amount of the payments in real dollars but rather simply assure that inflation does not decrease the value of the payment. In the EAJA, Congress apparently recognized that the $75 per hour attorney fee cap, effective October 1, 1981, would ultimately become insufficient and therefore authorized the court to increase the rate to account for inflation. Defendant has offered no convincing rationale as to why the statute should be interpreted to permit the court to address inflation for certain years involved but not for others. So long as the hourly rate allowed does not exceed "prevailing market rates for the kind and quality of the services furnished,"

the court would appear to have discretion under Section 2412(d)(2)(A) to include in the COLA post-performance inflation.[2]

For the reasons stated above, the court concludes that plaintiff is entitled to receive a COLA to the $75 per hour statutory rate to cover the increases in the cost of living for the Washington, D.C., area from October 1, 1981, the effective date of the EAJA, to June 28, 1989, the date on which this court held that plaintiff is entitled to recover attorney's fees. The parties agree that this results in a cost of living increase of 36.9775%, which amounts to an hourly fee of $102.73 and a total attorney fee award of $39,001.44. Defendant has not contended that this award exceeds the applicable "prevailing market rates for the kind and quality of the services furnished."

### Costs

■ The court's June 28, 1989, opinion and order indicates that plaintiff is entitled to an award of fees and expenses under Section 2412(d)(1)(A). That decision did not discuss an award of costs which is permitted under Section 2412(a). Unlike the award of fees and expenses, the award of Section 2412(a) costs is discretionary. Plaintiff has already received an award of costs relating to the court's consideration of the merits of the litigation. In the context of all the facts of this case, the court concludes that an additional award of costs covering the EAJA portion of this litigation is not warranted. Therefore, plaintiff's request for $347.20 in such costs is denied.

2. Defendant contends that *Library of Congress v. Shaw,* 478 U.S. 310, 319–23, 106 S.Ct. 2957, 2964–66, 92 L.Ed.2d 250 (1986), demands a contrary conclusion, but it does not. In *Shaw,* the trial court first calculated appropriate attorneys' fees for the services rendered and then added interest to those fees. Applying its prior decisions interpreting the doctrine of sovereign immunity, the Supreme Court concluded that "interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress." *Id.* at 315, 106 S.Ct. at 2962. Since the statute interpreted in *Shaw* (42 U.S.C. § 2000e–5(k)) merely authorized the award of "a reasonable attorney's fee," the Supreme Court found the statutory authorization necessary to support an award of interest to be absent.

### Conclusion

For the foregoing reasons, the Clerk of the Court is directed to enter judgment accordingly in the amount of $39,001.44.

IT IS SO ORDERED.

The attorneys' fee provision in the EAJA, however, in effect, contains the very link found missing in *Shaw.* The EAJA explicitly provides for adjustment to the $75 per hour statutory rate for cost of living increases, *i.e.,* there is an affirmative authorization by Congress permitting the grant of a COLA to the $75 per hour maximum rate. *See Wilkett,* 844 F.2d at 876. Therefore, the proper focus of inquiry herein is not whether Congress waived sovereign immunity to permit a COLA to the $75 statutory rate but rather, in effect, whether Congress precluded the court from considering inflation that occurred subsequent to performance of the attorney work when establishing a COLA. As explained above, Congress did not.