**Hong–Yee CHIU, Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 90–5044.

United States Court of Appeals, Federal Circuit.

Oct. 29, 1991.

---

Michael J. Kator, Kator, Scott & Heller, Washington, D.C., argued for plaintiff-appellee. With him on the brief was Richard A. Salzman.

George M. Beasley, III, Sr. Trial Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director.

Before NIES, Chief Judge, COWEN, Senior Circuit Judge, and MAYER, Circuit Judge.

NIES, Chief Judge.

This is an appeal by the government from the judgment of the United States Claims Court granting Hong–Yee Chiu attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1988) (EAJA), in an amount of $39,001.44. The government contests both the Claims Court's decision that Chiu is entitled to an award of attorney fees, *Chiu v. United States*, 17 Cl.Ct. 334 (1989), and the Claims Court's interpretation of the EAJA with respect to calculating the amount of a cost of living adjustment (COLA) by which the court increased the statutory rate of $75 an hour, *Chiu v. United States*, 18 Cl.Ct. 567 (1989). We affirm the Claims Court's judgment insofar as entitlement is concerned, but reverse and remand on quantum.

## BACKGROUND

The present appeal concerns an award of attorney fees incurred for litigation of a dispute over the elimination of Chiu's position by the National Aeronautics and Space Administration (NASA) via Reduction–in–Force (RIF), which occurred in 1978. After losing in the Civil Service Commission proceedings, Chiu filed suit in the United States Court of Claims pursuant to 5 U.S.C. § 7703(b)(1) (1978) (amended 1982). The Court of Claims remanded to the Merit Systems Protection Board (MSPB), which had become the administrative review tribunal, for reconsideration in light of a newly obtained deposition, that of Chiu's supervisor, Dr. Jastrow, the NASA official responsible for proposing the RIF of Chiu's position. On remand, the MSPB reviewed Dr. Jastrow's conduct and ruled that the RIF did not accord with the relevant regulations in that Dr. Jastrow had been motivated to eliminate Chiu personally because of Dr. Jastrow's dissatisfaction with Chiu's work rather than because of a need to eliminate the position he occupied. Accordingly, the MSPB directed NASA to reinstate Chiu with full back pay and benefits, which was done. Pursuant to the parties' stipulation, Chiu then filed an application with the Claims Court[1] for attorney fees under the Back Pay Act, 5 U.S.C. § 5596 (1982) (BPA), and the EAJA, and the issue of attorney fees has been the sole focus of

---

1. The trial division of the U.S. Court of Claims was reorganized as the U.S. Claims Court effective October 1, 1982 by the Federal Courts Improvement Act, Pub.L. No. 97–164, Title I, § 105, 96 Stat. 25, 27. Chiu thus filed his application for fees in December of 1982 with the Claims Court while the merits suit had been before the Court of Claims.

this litigation since 1982. The Claims Court initially denied Chiu's application for attorney fees. *See Chiu v. United States,* 6 Cl.Ct. 18 (1984) (Yannello, J.). The Claims Court concluded that the BPA did not support an award of attorney fees and that an award of attorney fees under the EAJA was not warranted because the position of the government in the litigation before the court was "substantially justified." *Id.* at 23–24. Chiu appealed to this court which affirmed on the basis of the opinion of the Claims Court. *Chiu v. United States,* 770 F.2d 180 (Fed.Cir.1985) (Table). Chiu followed with a petition for rehearing in banc. On the day Chiu's petition was denied in banc consideration, President Reagan signed into law an amendment to the EAJA which provided that the "position of the United States" included the "action or failure to act by the agency upon which the civil action is based" as well as the position taken by the United States in the litigation. *See* Pub.L. No. 99–80, § 2(c)(2)(B), 99 Stat. 183, 185 (1985). As a result of this amendment and this court's subsequent decision in *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1465–66 (Fed.Cir.1986) (in banc), which ruled that the new standard applied to all cases pending on the date of the enactment and placed the burden on the government to justify its position, this court vacated its judgment denying Chiu's attorney fee application and remanded the case for reconsideration. *See Chiu v. United States,* 887 F.2d 1094 (Fed.Cir.1986) (Table).

On remand, the case was assigned to Judge Andewelt, who determined that the government's position was not "substantially justified" over the entire course of the RIF action and subsequent litigation before the MSPB and Court of Claims. *Chiu,* 17 Cl.Ct. at 340. He based this conclusion on the agency's failure to demonstrate that Jastrow's recommendation to separate Chiu was based on Chiu's area of research not being worthy of support rather than on dissatisfaction with Chiu's performance. *Id.* at 339. Further, he found no overriding justification for the position of the United States.

The EAJA provides for an attorney fee award based on a $75 per hour rate with certain possible adjustments. The Claims Court adjusted this rate to $102.73 per hour, construing the statute to allow an adjustment by reason of inflation from the time the $75 figure was set in 1981 to the date of the fee award on June 28, 1989, and applied that rate to all of the attorney's hours of work throughout the years of litigation. *See Chiu,* 18 Cl.Ct. at 571–72.

The government appeals the judgment both as to entitlement and quantum. We exercise jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1988).

## ISSUES

A. Whether the Claims Court abused its discretion by determining that the government's position throughout these proceedings was not "substantially justified" within the meaning of the EAJA?

B. Whether the Claims Court erred as a matter of law in making an upward adjustment to the EAJA hourly fee rate for an increase in the cost of living which included time periods *after* legal services were performed?

## DISCUSSION

A trial court's decision to award attorney fees under the EAJA, and its determination of the amount of such an award, are discretionary. On appeal, decisions concerning attorney fees are reviewed for abuse of discretion. *See Pierce v. Underwood,* 487 U.S. 552, 557–63, 108 S.Ct. 2541, 2545–49, 101 L.Ed.2d 490 (1988). Thus, only if the trial court erred in interpreting the law or exercised its judgment on clearly erroneous findings of material fact, or its decision represents an irrational judgment in weighing the relevant factors can its decision be overturned. *PPG Indus., Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565, 1570–72, 6 USPQ2d 1010, 1015–16 (Fed.Cir.1988) (Bissell, J., additional views); *Oliveira v. United States,* 827 F.2d 735, 742 (Fed.Cir.1987); *see also* Friendly, *Indiscretion About Discretion,* 31 Emory L.J., 747, 762–63 (1982). Upon review of

**714**

the Claims Court's entitlement and quantum determinations in the instant case, we conclude that the trial court did not abuse its discretion on entitlement, but that the Claims Court's calculation of the inflation factor is contrary to law.

### A.

### ENTITLEMENT

■ The EAJA provides a specific waiver of sovereign immunity to enable persons who prevail in certain suits brought against the government to an award of attorney fees incurred in challenging the government's action in court. *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1385–86 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). Section 2412(d)(1) provides, in relevant part:

(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Absent this or some other specific statutory waiver of sovereign immunity, attorney fees may not be recovered in suits against the United States.[2] *Escobar v. United States Immigration & Naturalization Serv.,* 935 F.2d 650, 653 n. 4 (4th Cir.1991); *Spencer v. National Labor Relations Bd.,* 712 F.2d 539, 544 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). There is no dispute in this case as to Chiu's status as a "prevailing party." Thus, Chiu is entitled to an award of attorney fees unless the court finds "special circumstances" which make an award unjust or that the government's position is

"substantially justified." *Gavette,* 808 F.2d at 1466. The government pressed arguments on both "special circumstances" and "substantial justification" to the Claims Court but prevailed on neither. On appeal, the government has dropped its "special circumstances" argument and urges only that we rule that the Claims Court abused its discretion in finding the position of the government not "substantially justified." We cannot hold, however, that the Claims Court's determination of no substantial justification was an abuse of discretion.

What meaning to ascribe to the statutory language that the "position of the United States" must be "substantially justified" is not readily apparent. As indicated previously, in 1985 the EAJA was amended to clarify the meaning of "position of the United States." Subparagraph (1)(B) of section 2412(d) was revised to read:

Whether or not the position of the United States was substantially justified shall be determined on the basis of the record **(including the record with respect to the action or failure to act by the agency upon which the civil action is based)** which is made in the civil action for which fees and other expenses are sought. [Emphasis added.]

Similarly, subparagraph (2)(D) was added to reflect that

(D) "position of the United States," means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action was based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings.

Prior to this amendment, this court had interpreted the "position of the United States" for purposes of evaluating whether a claimant was entitled to attorney fees to be limited to the position the government took during the litigation phase of the challenged government action. *See Olsen v. Department of Commerce, Census Bu-*

**2.** The EAJA even includes a specific clause stating that the Claims Court constitutes a "court" for purposes of attorney fee awards thereunder. *See* 28 U.S.C. § 2412(d)(2)(F).

*reau,* 735 F.2d 558, 561 (Fed.Cir.1984); *Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387, 1390–91 (Fed.Cir. 1982). The 1985 amendment clarified that, when assessing whether to award attorney fees incurred by a party who has successfully challenged a governmental action in a particular court, the entirety of the conduct of the government is to be viewed, including the action or inaction by the agency prior to litigation.

Until clarified by the Supreme Court, appellate courts were similarly split as to the meaning of the phrase "substantially justified." *Compare Gavette,* 808 F.2d at 1467–68 (position must be "clearly reasonable") and *Spencer,* 712 F.2d at 558 (position must be slightly more than reasonable) *with Foster v. Tourtellotte,* 704 F.2d 1109, 1112 (9th Cir.1983) (position must have reasonableness in law and fact) and *Ramos v. Haig,* 716 F.2d 471, 473 (7th Cir.1983) (position must be reasonable). However, the Supreme Court in *Underwood,* 487 U.S. at 565, 108 S.Ct. at 2550, mandated:

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. [Citations omitted.]

Thus, applying the 1985 EAJA amendments to determine whether the overall position of the United States is substantially justified,[3] trial courts are instructed to

look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact.[4]

■ In this case, the Claims Court correctly looked to the overall position of the government, both prior to and during litigation. The Claims Court assumed the government's position in litigation before the Court of Claims to be reasonable, but found that the lack of substantial justification for taking the improper RIF action outweighed any reasonable positions taken thereafter:

> But, on the facts of this case, even assuming the position of the United States during this civil action was substantially justified, the position of the United States overall was not. Herein, the agency action had the substantial effect of separating plaintiff from his career position while the litigation phase was abbreviated, never reached the merits, and involved primarily the issue of the correctness of the agency decision to separate plaintiff. On these facts, any justification for the litigation phase cannot outweigh the lack of substantial justification for the original agency action.

*Chiu,* 17 Cl.Ct. at 340. The government disagrees with the Claims Court's conclusion with respect to the agency's justification for implementing the RIF on two grounds. First, the government contends that the position of the agency was substantially justified because the agency officials who actually approved the RIF had no improper motive or knowledge that Chiu's supervisor recommended the RIF of Chiu's position because he was dissatisfied with Chiu's work rather than simply desiring to

---

3. The government does not dispute that the 1985 EAJA Amendments apply even though the underlying agency action occurred in 1978 and the agency's action was determined by the MSPB to be unwarranted in 1982. *See Gavette,* 808 F.2d at 1467.

4. This exercise, to a certain extent and as the Supreme Court recognized in *Underwood,* 487 U.S. at 557–63, 108 S.Ct. at 2545–49, is quintessentially discretionary in nature. For instance, whether the government was substantially justi-

fied overall where in litigation it depended on the ground of lack of jurisdiction and a party prevails on a substantive aspect of the agency's action which gave rise to the litigation necessarily involves an apples to oranges comparison. It is for the trial court to weigh each position taken and conclude which way the scale tips, and as an appellate court we must be wary not to redistribute these weights among different positions unless a serious error in judgment has been made.

eliminate the position itself. Only the latter reason will support a RIF. Second, the government contends that Judge Andewelt failed to give proper deference to certain findings of Judge Yannello regarding the agency's action in her opinion which previously was before this court. Neither of these arguments convinces us that the Claims Court abused its discretion.

The government's first argument, as indicated, challenges the Claims Court's reliance on the motivation of Dr. Jastrow, who recommended the RIF action. Per the government, as a matter of law, the "position of the United States" at the agency level is to be assessed solely on the reasonableness of the position of the officials who actually took the action. And once this restriction is accepted, the position of the United States at the agency level is substantially justified because the NASA officials deciding to RIF Chiu's position were unaware of Jastrow's at that time unexpressed motivation, and had no reason to investigate his motivations before they acted on his recommendation that Chiu's position be RIF'ed. The government at no time has disagreed with petitioner on the principles of law applicable to the merits decision. Moreover, the record contains no evidence disputing the Jastrow deposition as a matter of fact.

█ The phrase "action or failure to act by the agency upon which the civil action is based" does not include unauthorized acts of employees which would not be subject to judicial review. That is not, however, the case here respecting Jastrow's action which was deemed the action of the agency in the ruling on the merits. No record evidence indicates that the NASA officials who implemented the RIF made a decision independently, that is, apart from Jastrow's recommendation. Judge Andewelt specifically found such evidence of independent action to be lacking. *Chiu,* 17 Cl.Ct. at 339. The government in its brief refers to the findings in the Federal Employee Appeals Authority (FEAA) decision that the evidence before the NASA officials at the time they approved the RIF supported that

action, the Civil Service Commission Board's declining to review that decision, and the Court of Claims' opinion remanding to the MSPB.[5] However, all of the evidence relied upon by the FEAA in rejecting Chiu's initial appeal was predicated not on the NASA official's independent conclusions as to the propriety of the RIF; rather, the FEAA based its decision to uphold the RIF solely on Dr. Jastrow's stated reasons. The FEAA concluded, "[t]here is no question that appellant's position was abolished *because Dr. Jastrow decided he could no longer afford to fund the position at the possible expense of other projects deemed by him to be of greater importance to the agency's mission." Appeal of Hong–Yee Chiu,* Docket No. DC035190019 at 5 (FEAA 1978) (emphasis added). Only after the matter reached the Court of Claims were Dr. Jastrow's motivations to rid the agency of a specific nonproductive employee rather than to eliminate a position revealed.

Thus the government asks us to find substantial justification where the officials who were ultimately responsible did no more than rubber stamp a facially proper recommendation. We decline the government's invitation to absolve the agency on that basis. We conclude that the Claims Court did not abuse its discretion in rejecting the government's assertion of substantial justification in this case where the government cannot point to a genuine dispute over either the facts or the applicable law respecting the merits.

The government also seeks to negate Judge Andewelt's conclusion that the agency's action was not "substantially justified" because he did not defer to the findings made on Chiu's attorney fee application by Judge Yannello prior to the remand. Judge Andewelt discounted Judge Yannello's findings on the basis that she had "focused exclusively on the position of the United States during the court litigation and not on the correctness of [NASA's] original decision to separate plaintiff." *Chiu,* 17 Cl.Ct. at 337. The government, however, calls this statement either an er-

---

5. The FEAA was the first avenue of review authority in this case.

ror of law or a clearly erroneous finding of fact, in light of Judge Yanello's finding that the agency did not err in failing to develop the evidence ultimately obtained by Chiu. In particular, the government relies on the following statement in her opinion to show that she considered the agency's prelitigation conduct and found it was unobjectionable:

> In the circumstances here present, this court can find no error on the part of the agency in connection with the RIF action or the FEAA appeal or with either the agency or the Department of Justice in failing to develop earlier the evidence ultimately discovered by plaintiff in the court proceedings.

*Chiu,* 6 Cl.Ct. at 23.

Assuming Judge Yannello's "findings" should be given the interpretation urged by the government, we would nevertheless uphold Judge Andewelt's independent evaluation as to the lack of "substantial justification" for the agency position. While the government urges "law of the case" constrained him from making new findings, we disagree.

In this regard, this case bears a striking resemblance to another recent case decided by this court, *Exxon v. United States,* 931 F.2d 874 (Fed.Cir.1991), wherein this court held that a successor judge assigned to take over a case after remand from this court was not required by law of the case, RUSCC 52,[6] or any other authority, to give any particular deference to a predecessor judge's findings of ultimate fact which were not examined in, relied on, or otherwise necessary to the decision in a prior appeal. In *Exxon,* Chief Judge Smith took over for former Chief Judge Kozinski after remand from this court. The case involved the allowability of a tax deduction on income tax of certain assets lost in Fidel Castro's takeover of Cuba. Whether Exxon qualified for the deduction turned entirely on whether Exxon's Cuban-based subsidiary became insolvent on June 30 or July 1, 1960. Chief Judge Kozinski had found that June 30 was the date of insolvency, and thus that Exxon was not enti-

tled to the deduction. On appeal this court reversed, but did not address Chief Judge Kozinski's findings of fact as to the date of insolvency. On remand, Chief Judge Smith took over the case and decided first that the appeal which reversed Chief Judge Kozinski implicitly determined that the insolvency occurred on July 1 and thus concluded that he was bound by law of the case. The government appealed this decision, and this court reversed and remanded again because the prior appellate decision had not explicitly or implicitly addressed the question of Exxon's date of insolvency and thus the law of the case doctrine did not obtain. On this remand, Chief Judge Smith decided the question of the date of insolvency anew, and concluded that Chief Judge Kozinski's original findings as to the date of insolvency were based on a faulty analysis and that the date of insolvency was July 1. The government appealed again and argued that Chief Judge Smith was constrained to follow his predecessor's fact findings under either the law of the case or unless those findings were found to be clearly erroneous in accordance with RUSCC 52(a). We upheld Chief Judge Smith and in so doing explained the inapplicability of law of the case:

> [T]he legality of the Claims Court's revision of its previous findings [is not] in any way affected by the fact that the revision was by a different trial judge. A successor judge steps into the shoes of his or her predecessor, and is thus bound by the same rulings and given the same freedom as the first judge. To the extent that a trial judge can alter a previous ruling, so too can a successor judge:
>
>> The first judge always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court. A fortiori, if the first judge can ... change his ruling, a second judge should have and does have the power to do so as well.
>
> *Jamesbury [Corp. v. Litton Industrial Products, Inc.],* 839 F.2d [1544] at 1551, 5 USPQ2d [1779] at 1784 [Fed.Cir.1988]

---

**6.** RUSCC 52 is the Claims Court counterpart of Fed.R.Civ.P. 52.

(quoting *Corporacion de Mercadeo Agricola v. Mellon Bank Int'l,* 608 F.2d 43, 48 (2d Cir.1979)). Here, as Chief Judge Smith explicitly stated in his opinion, the amended finding of ultimate fact was based upon a mathematical analysis of bond data submitted by the parties, and did not rely upon the weighing of conflicting testimony or evaluation of the credibility of witnesses who appeared before Chief Judge Kozinski. *Exxon [Corp. v. U.S.]*, 19 Cl.Ct. [755] at 761 [1990]. In this situation, Chief Judge Smith was as free to alter his predecessor's finding of ultimate fact as Chief Judge Kozinski himself would have been.

*Id.* at 878.

■ This reasoning applies with equal force in this case. Our initial affirmance of Judge Yannello's decision did not address expressly or implicitly her findings as to the government's prelitigation conduct. In that decision, we affirmed the Claims Court's application of the EAJA and BPA insofar as it concluded that the facts did not support an award of attorney fees for any of the litigation proceedings. As previously stated, however, no consideration of the agency's prelitigation conduct was necessary in making this determination. Thus, as in *Exxon,* the law of the case did not constrain Judge Andewelt in his EAJA analysis after the case was remanded. In the absence of any limitation imposed on Judge Andewelt by the doctrine of "law of the case" or expressly in the remand order, he committed no legal error in reassessing the record to redetermine whether Chiu was entitled to attorney fees under the EAJA.[7] Indeed, that was the purpose of the remand. And since Judge Andewelt did not abuse his discretion in finding that the position of the United States was not substantially justified, Chiu is entitled to an award of attorney fees under the EAJA for the proceedings before the Claims Court/ Court of Claims.

---

**7.** Equally inapplicable is RUSCC 52(a) which permits a court to disturb a court's fact findings only where such findings are clearly erroneous.

## B.

## QUANTUM

The government next argues that even if Chiu is entitled to attorney fees under the EAJA, the Claims Court erred in its determination of the amount of such fees. Specifically, the government contests the hourly rate of $102.73 used by the Claims Court to compute the fee award. The EAJA sets the hourly rate for attorney fee awards at $75 and permits upward adjustments to this figure in two circumstances; for increases in the "cost of living" and where "special factors" are found to exist:

(2) For the purposes of this subsection—

(A) "fees and other expenses" includes ... reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C. § 2412(d)(2)(A). The government's disagreement with the Claims Court's determination of the applicable hourly rate centers on the upward adjustment made to reflect increases in the cost of living during the litigation.

■ To adjust the base rate of $75 per hour for increases in the cost of living as provided by the EAJA, the court must first set a base date from which increases in the cost of living may be calculated. While the government once advanced the date of reenactment of the EAJA in 1985 as the base date in case after case, it now appears to have accepted that the original date of enactment of the statute, October 1, 1981, is the appropriate starting date. *See Headlee v. Bowen,* 869 F.2d 548, 549 (10th Cir.), *cert. denied,* 493 U.S. 979, 110 S.Ct. 507,

---

As we stated in *Exxon,* 931 F.2d at 878, that rule applies only to appellate review.

107 L.Ed.2d 509 (1989); *Ramon–Sepulveda v. United States Immigration & Naturalization Serv.*, 863 F.2d 1458, 1464 (9th Cir.1988); *Kelly v. Bowen*, 862 F.2d 1333, 1336 (8th Cir.1988); *Trichilo v. Secretary of Health and Human Servs.*, 823 F.2d 702, 705–07 (2d Cir.1987); *Action on Smoking and Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 218 (D.C.Cir.1984). The Claims Court here correctly used that date for computation of the fee rate COLA, excluding a COLA for services rendered before that date. *See Chiu*, 18 Cl.Ct. at 570.

■ The next step for computing a COLA to the fee rate is establishing the end date or dates. The Claims Court used a single end date, namely the date judgment was entered granting the EAJA fee award, June 28, 1989. The government takes issue with use of that date, which is particularly significant here inasmuch as the attorney's services were in large part performed much earlier. The government's position is that any COLA after the date the attorney's services are rendered, *i.e.*, post-performance, constitutes an award for delay in receipt of fee reimbursement. Per the government, such adjustment contravenes the no-interest rule reaffirmed by the Supreme Court in *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). We agree. The EAJA does not authorize increases to the hourly rate in the nature of interest payments. Further, the no-interest rule obtains here to limit the COLA to the date on which legal services were performed and fees thereby incurred.

In *Shaw*, the Supreme Court invoked the no-interest rule to bar recovery of interest on an award of reasonable attorney fees pursuant to section 706(k) of the Civil Rights Act, 42 U.S.C. § 2000e–5(k). The Court set forth in *Shaw* two principles which are crucial to the disposition of this case. First, the Court soundly rejected any distinction between types of awards for purposes of the no-interest rule so long as the award compensated for the time value of money. *Id.* at 321–22, 106 S.Ct. at 2965. The second proposition is that no award in the nature of interest against the United States is permitted unless expressly and unambiguously authorized by statute. *Id.* at 323–24, 106 S.Ct. at 2966. Here, the post-performance adjustment to the attorney fee rate constitutes payment for the time value of money and, thus, the no-interest rule bars the award unless expressly and unambiguously authorized in the EAJA. We are further convinced that the EAJA does not mandate such adjustments to the hourly fee rate.

In including the post-performance time period within the COLA to the EAJA fee rate, the Claims Court characterized this adjustment as one that offsets the decrease in the value of the $75 fee limitation due to inflation until the decision was rendered that fees are to be paid by the government. *See Chiu*, 18 Cl.Ct. at 571. We agree that adjustment to the EAJA fee rate for post-performance periods has this effect. This characterization, however, clearly implicates the no-interest rule. As the Supreme Court stated in *Shaw*, 478 U.S. at 321, 106 S.Ct. at 2965:

> [T]he force of the no-interest rule cannot be avoided simply by devising a new name for an old institution:
>
> "[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it." *United States v. Mescalero Apache Tribe*, 207 Ct.Cl. 369, 389, 518 F.2d 1309, 1322 (1975), *cert. denied*, 425 U.S. 911 [96 S.Ct. 1506, 47 L.Ed.2d 761] (1976).

That the Claims Court characterized the COLA as an adjustment for inflation is thus of no moment for purposes of the no-interest rule. Indeed, in rejecting any distinction between "interest" and "belated receipt of money," the Court expressly referred to adjustments for inflation by reason of delay as within the class of awards subject to the no-interest rule:

> *Interest and a delay factor share an identical function.* They are designed to compensate for the belated receipt of money. The no-interest rule has been

applied to prevent parties from holding the United States liable on claims grounded on the belated receipt of funds, even when characterized as compensation for delay. [Citation omitted.] Thus, whether the loss to be compensated by an increase in fee award stems from an opportunity cost or *from the effects of inflation*, the increase is prohibited by the no-interest rule.

*Id.* at 322, 106 S.Ct. at 2965 (emphasis added). In the usual fee relationship, a preperformance COLA implicates no delay factor in receipt of moneys. Prior to services being performed, there is no obligation to pay and no fee incurred, except possibly in unusual circumstances not present here. Thus, in the pre-performance period there is no delay in receipt of moneys for attorney fees; an adjustment in the ceiling price for inflation during that period does not compensate for any delay; and such an adjustment can not properly be characterized as interest. Therefore, the COLA provision in the EAJA need not overcome the no-interest rule in order to permit the fee cap to be raised with respect to legal services performed thereafter.

The opposite is true after services are rendered. Where such services have been timely paid for by the client,[8] any adjustment for time during the period until the award is made and presumably paid to the client can only be an adjustment for loss of use of the money by reason of delay. Indeed, this is precisely why the adjustment was made in this case. *See Chiu,* 18 Cl.Ct. at 571–72. However, under *Shaw,* such an adjustment constitutes a payment of interest on fees incurred at the time a lower cap applied.

Thus, the Claims Court's analysis was flawed in discerning no difference in allowance of an adjustment for inflation whether pre- or post-performance. The latter situation implicates the no-interest rule, the former does not. *See, e.g., Phillips v. General Servs. Admin.,* 924 F.2d 1577, 1583 (Fed.Cir.1991); *Griffin & Dickson v. United States,* 21 Cl.Ct. 1, 10 & n. 9 (1990)

(Rader, J.); *Cox Constr. Co. v. United States,* 17 Cl.Ct. 29, 37 (1989); *Kunz Constr. Co. v. United States,* 16 Cl.Ct. 431, 439 (1989), *aff'd,* 899 F.2d 1227 (Fed.Cir. 1990).

Due to the applicability of the no-interest rule, to determine whether post-performance time periods may be included in adjusting the EAJA fee rate, we must look for explicit authorization. As the Supreme Court explained in *Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963:

> In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign, *see McMahon v. United States,* 342 U.S. 25, 27 [72 S.Ct. 17, 19, 96 L.Ed. 26] (1951), and not enlarge the waiver " 'beyond what the language requires.' " *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86 [103 S.Ct. 3274, 3278, 77 L.Ed.2d 938] (1983), quoting *Eastern Transportation Co. v. United States,* 272 U.S. 675, 686 [47 S.Ct. 289, 291, 71 L.Ed. 472] (1927). The no-interest rule provides an added gloss of strictness upon these usual rules.

> "[T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." *United States v. N.Y. Rayon Importing Co.,* 329 U.S. [654], at 659 [67 S.Ct. 601, 604, 91 L.Ed. 577] [1947].

The Claims Court viewed the EAJA language of section 2412(d)(2)(A) which expressly permits the court to determine that "an increase in the cost of living … justifies a higher [than $75 per hour] fee," as sufficient authorization for the court to include an adjustment for post-performance time periods "so long as the hourly rate

---

**8.** It is unclear when Chiu actually paid the fees. Chiu's brief urges that Judge Andewelt's decision was correct "to fully compensate Dr. Chiu," from which we infer he did make payment. If he did not, then he himself has suffered no economic loss from delay in reimbursement.

allowed does not exceed 'prevailing market rates.'" *See Chiu,* 18 Cl.Ct. at 570–72. We do not agree that this language meets the exacting standard required to grant the Claims Court such discretion. It must be borne in mind that the statute before us is a fee shifting statute not a damage award statute. Further, the statute concerns an adjustment of a $75 cap on attorney fees set with respect to all fees, market rate or not, incurred in 1981. Clearly, the statute does not contemplate full recoupment. *See Underwood,* 487 U.S. at 573, 108 S.Ct. at 2554. That is the point of the cap. It even more clearly does not contemplate recoupment of delay damages.

■ Were there any doubt on this interpretation, the language of the statute is at best ambiguous, and in accordance with the no-interest rule, awards in the nature of interest are not permitted except where the statutory mandate is unequivocal. *Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963; *Doyle v. United States,* 931 F.2d 1546 (Fed.Cir. 1991). For the foregoing reasons, we conclude that an adjustment to the attorney fee rate cap to compensate for the plaintiff's economic loss due to delay is not a "cost of living" adjustment to the *fee cap* within the meaning of section 2412(d)(2)(A) of the EAJA. Thus, Chiu's EAJA attorney fee rate COLA can include only pre-performance time periods.

Chiu cites a number of cases from the District of Columbia Circuit and one Third Circuit case in an effort to support the inclusion of post-performance time inflation. None of these cases persuade us to a different result. With respect to the cases from the District of Columbia Circuit, that circuit adheres to the view that COLA's to the EAJA fee rate are restricted to the date services are performed. *See Wilkett v. Interstate Commerce Comm'n,* 844 F.2d 867, 875 (D.C.Cir.1988); *Massachusetts Fair Share v. Law Enforcement Assist-*

*ance Admin.,* 776 F.2d 1066, 1069 (D.C.Cir. 1985). However, that circuit adopted a position permitting adjustment to the fee rate for delay in receipt of fees as a "special factor." *See Wilkett,* 844 F.2d at 875–77 & nn. 4 & 5; *Hirschey v. Federal Energy Regulatory Comm'n,* 777 F.2d 1, 5 (D.C.Cir.1985). That position, however, has been expressly discredited by the Supreme Court in *Underwood,* 487 U.S. at 573, 108 S.Ct. at 2554, where the Supreme Court limited the cognizable "special factors," for purposes of fee rate increase, to those that are not of "broad and general application." It is not urged here that delay between the time that debt for legal services is incurred and the time an award under the EAJA is obtained may be deemed a "special factor," and we believe, in any event, it would suffer from the same no-interest defect as a COLA for post-performance inflation.

With respect to the Third Circuit case, *Garcia v. Schweiker,* 829 F.2d 396 (3d Cir. 1987), Chiu is correct that in that case the court refused to limit the COLA to the fee rate to the time services were rendered. The court in *Garcia* premised its conclusion on the belief that the agency should not reap the benefits of any inflation during litigation, and that attorneys should not have the purchasing power of their fees eroded by inflation. *Id.* at 402. We respectfully disagree with the position taken by the Third Circuit in *Garcia.* While the Third Circuit is correct that the agency "reaps the benefits" of any delay between the time services are performed and the time of award under the EAJA, the Third Circuit failed to acknowledge and discuss *Shaw* and the no-interest rule, which expressly serves the purpose of permitting the government to occupy an apparently favored position by protecting it from claims for interest that would prevail against private parties.[9] *Shaw,* 478 U.S. at 317–18, 106 S.Ct. at 2962–63. In light of

---

9. We disagree also that the focus of the inquiry should be on the attorneys. The EAJA is designed to reimburse the litigant, not protect attorneys from fee erosion. *See, e.g., Phillips v. General Servs. Admin.,* 924 F.2d 1577, 1582 (Fed.Cir.1991) (fee paid to prevailing party under EAJA, not to attorney); *Naekel v. Depart-*

*ment of Transp., FAA,* 845 F.2d 976, 981 (Fed. Cir.1988) (pro se litigant not entitled to EAJA award because intended to reimburse prevailing party for attorney fees incurred); *Merrell v. Block,* 809 F.2d 639, 641–42 (9th Cir.1987) (same); *Crooker v. Environmental Protection Agency,* 763 F.2d 16, 17 (1st Cir.1985) (same).

the no-interest rule, as well as the restrictive interpretation given the EAJA by the Supreme Court subsequent to *Shaw* in *Underwood*, the ambiguity as to whether the statutory authorization for COLA's to the EAJA fee rate includes post-performance time periods which constitute delay until receipt of a fee award must be resolved in favor of the sovereign. In this case, the COLA to the EAJA fee rate is required to be calculated from October 1, 1981 to the date services are performed, and the Claims Court had no discretion to extend the COLA end date beyond the performance date. Consequently, the Claims Court's quantum determination must be remanded for redetermination.[10]

### Commissioner v. Jean

As a final point, the government raises the Supreme Court's footnote in its recent decision of *Commissioner v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), and argues that the attorney fee quantum determination must be remanded and redetermined to consider reductions to the fee award for the fee litigation phase of the Claims Court proceedings. In *Commissioner v. Jean*, the Supreme Court held that only one finding of no "substantial justification" was required under the EAJA to permit a fee award for the entire proceedings before that court, including litigation over the EAJA fee award. In a footnote, however, the Court indicated that its decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), required

> the district court to consider the relationship between the amount of the fee awarded and the results obtained[. Thus] fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation. For example, if the Government's challenge to a requested rate for paralegal time resulted in the

> court's recalculating and reducing the award for paralegal time from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate.

*Jean*, 110 S.Ct. at 2321 n. 10. The Claims Court did not have the benefit of *Jean* at the time it rendered its quantum determination. In light of the need for remand to redetermine quantum, we agree with the government that any such quantum redetermination should take heed of the Supreme Court's *Jean* decision, particularly with regard to that portion of the fee litigation attributable to the government's contesting inclusion in the COLA to the fee rate an adjustment for post-performance inflation.

### CONCLUSION

The Claims Court did not abuse its discretion in determining that Chiu was entitled to an award of attorney fees under the EAJA for the Court of Claims/Claims Court proceedings. However, the Claims Court misinterpreted the law by raising the EAJA fee rate to cover a cost of living adjustment up to the date of the fee award and applying that adjusted fee rate to all of the attorney work performed during the litigation. Consequently, we remand for redetermination of the EAJA fee award consistent with this opinion and the Supreme Court's opinion in *Commissioner v. Jean*.

### COSTS

No costs to either party.

AFFIRMED–IN–PART, REVERSED–IN–PART, and REMANDED.

---

**10.** By holding that a post-performance COLA may not be awarded, we do not mean to preclude the court from adopting, in an appropriate case, a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point. *See, e.g., Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135, 140

(1988). However, in determining what the amount of that type of COLA adjustment should be, the court must exclude inflation occurring after all services have been performed and reasonably weigh the quantum of hours and inflation factors which are otherwise applicable.