991 F.2d 809
 38 Cont.Cas.Fed. (CCH) P 76,498
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GILROY-SIMS & ASSOCIATES, Appellant,
v.
Richard G. AUSTIN, Administrator, General Services
Administration, Appellee.
 No. 92-1439.
 United States Court of Appeals, Federal Circuit.
 March 5, 1993.
 
 Before ARCHER, Circuit Judge, SKELTON, Senior Circuit Judge, and CLEVENGER, Circuit Judge.
 CLEVENGER, Circuit Judge.
 
 
 1
 Gilroy-Sims & Associates appeal the June 18, 1992 decision of the General Services Board of Contract Appeals (Board) denying it attorney's fees and other expenses under the Equal Access to Justice Act (EAJA), Pub.L. No. 96-481, 1980 U.S.C.C.A.N. (94 Stat.) 2325 (codified as amended at various sections of 5 & 28 U.S.C. in particular, 5 U.S.C. § 504 (1988)). Gilroy-Sims & Assocs. v. General Servs. Admin., GSBCA No. 11501-C(10504) (June 18, 1992). These fees and expenses were incurred while responding to a counterclaim made by the General Services Administration (GSA). We reverse and remand.
 
 
 2
 * In September 1968, Gilroy-Sims and GSA entered into a twenty-year lease for a building in St. Louis, Missouri to begin in 1970. Gilroy-Sims operated the building until May 1986. During this period GSA paid Gilroy-Sims for rent, overtime utilities and overtime use of the building. When GSA took over operation of the building in 1986 it reduced the amount paid to Gilroy-Sims by GSA's operating costs.
 
 
 3
 Gilroy-Sims submitted a claim to a GSA contracting officer for payment under the overtime use clause of the lease for overtime use of certain space following GSA's takeover of the building. The contracting officer denied the claim, and Gilroy-Sims appealed to the Board. Upon a request by GSA, the Board bifurcated the proceedings into two portions, entitlement and quantum.
 
 
 4
 In its entitlement decision, the Board found that Gilroy-Sims was due compensation for depreciation of equipment caused by overtime use, separate and apart from payment for excess utility usage, because the parties treated obligations to pay for extra utilities and overtime use of space separately during the life of the lease. The Board also explicitly found that the overtime use rate for the period of the lease was $9.85 per hour for the first floor and $13 per hour for the other floors, not to exceed $87 per hour. Gilroy-Sims & Assocs., 88-1 B.C.A. (CCH) p 20,459, at 103,464-65 (GSBCA1987). The Board denied GSA's request for reconsideration. Gilroy-Sims & Assocs., 88-3 B.C.A. (CCH) p 21,085 (GSBCA1988). This court summarily affirmed the Board's entitlement decision. United States v. Gilroy-Sims & Assocs., 878 F.2d 1447 (Fed.Cir.1989) (table).
 
 
 5
 Following the entitlement decision, during discovery in the quantum phase, it appeared that GSA was going to attempt to attack the Board's finding on overtime use rate by asserting that an oral agreement modified the overtime rate stated in the lease. In response, Gilroy-Sims made a motion in limine seeking to preclude GSA from offering evidence relating to this agreement. In a prehearing to the quantum portion of the case, the Board granted the motion stating that GSA was simply raising a defense that it should have raised during the entitlement phase of the appeal. Gilroy-Sims & Assocs., Ltd., 90-3 B.C.A. (CCH) p 23,132 (GSBCA1990).
 
 
 6
 During the litigation of quantum, in November 1989, a GSA contracting officer issued a claim against Gilroy-Sims seeking a refund of $987,000 to recover an amount of money already paid to Gilroy-Sims over the term of the lease greater than the actual audited value of the equipment depreciation. While Gilroy-Sims sought $1.4 million in overtime use payments during the quantum proceedings, GSA pursued the contracting officer's demand for a refund as a counterclaim. The Board dismissed the counterclaim as an "impermissible collateral attack on the entitlement decision" and awarded Gilroy-Sims $218,002.92 in overtime use, calculated at $13 for each hour of overtime use. Gilroy-Sims & Assocs., Ltd., 91-2 B.C.A. (CCH) p 24,005, at 120,131 (GSBCA1991). The Board later adjusted its method of calculation and increased Gilroy-Sims' recovery to $283,110.72. Gilroy-Sims & Assocs., Ltd., 92-1 B.C.A. (CCH) p 24,559 (GSBCA1991).
 
 
 7
 Gilroy-Sims then sought to recover EAJA attorney's fees and expenses incurred during the adjudication before the Board for pursuing its claim for overtime use fees and for defending GSA's counterclaim. The Board denied Gilroy-Sims' request for EAJA fees on the counterclaim finding GSA's counterclaim substantially justified because it was a logical extension of Gilroy-Sims' winning theory and because it was based on a decision of the contracting officer who would not necessarily be aware of the concept of legal finality and whose motives did not show a desire to undermine the Board's entitlement decision. Gilroy-Sims & Assocs. v. General Servs. Admin., GSBCA No. 11501-C(10504) (June 18, 1992). Three months later, despite having determined that GSA's position on its counterclaim was substantially justified, the Board granted Gilroy-Sims $93,580.55 in EAJA fees and expenses for its overtime use claim finding that GSA's position on Gilroy-Sims' overtime use claim was not substantially justified because the money was due as negotiated, GSA failed to call witnesses to rebut Gilroy-Sims' contract interpretation and contemporaneous internal memoranda supported Gilroy-Sims' interpretation of the contract. Gilroy-Sims & Assocs. v. General Servs. Admin., GSBCA No. 11778-C(8720, et al.) (Sept. 25, 1992).
 
 II
 
 8
 The issue in this case is whether GSA's position on its counterclaim was substantially justified when its position on Gilroy-Sims' closely related claim was not. Attorney's fees and other expenses shall be awarded to a prevailing party in an adversary adjudication before an agency "unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1) (1988). An agency's position is "substantially justified" if it is
 
 
 9
 "justified in substance or in the main"--that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation[.]
 
 
 10
 Pierce v. Underwood, 487 U.S. 552, 565 (1988).
 
 
 11
 The scope of judicial review of an administrative agency's EAJA fees and expenses determination is established by 5 U.S.C. § 504(c)(2) (1988).* Such review
 
 
 12
 shall be based solely on the factual record made before the agency. The court may modify the determination of fees and other expenses only if the court finds that the failure to make an award of fees and other expenses, or the calculation of the amount of the award, was unsupported by substantial evidence.
 
 
 13
 5 U.S.C. § 504(c)(2). Substantial evidence is defined as
 
 
 14
 ["]more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [It] "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."
 
 
 15
 Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed.Cir.1984) (quoting Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 477 (1951); Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966)).
 
 III
 
 16
 The Board's finding that GSA's position on the counterclaim was substantially justified rests on three findings. One, that the contracting officer's claim was a "logical extension" of Gilroy-Sims' winning theory, two, that the contracting officer was not shown to have acted with bad motives and three, that the contracting officer is not expected to know of litigation concepts such as law of the case. None of these findings is sufficient to sustain the Board's determination.
 
 
 17
 First, the contracting officer's refund claim cannot have been a logical extension of Gilroy-Sims' theory. The contracting officer sought to recover overtime use fees paid during the term of the lease that were greater than the actual depreciation of certain equipment owned by Gilroy-Sims. Seeking such recovery after the Board issued its entitlement decision might have been logical if the payment rate (ostensibly to cover depreciation) had not been set forth in the lease. In its entitlement decision, however, the Board found that the parties agreed to a contract rate of $9.85 per hour for the first floor and $13 per hour for the remaining floors with a cap of $87 per hour sometime in 1968 before the parties entered into the lease. Gilroy-Sims, 88-1 B.C.A. (CCH) p 20,459, at 103,464. Thus, following the entitlement decision GSA could never have "logically" concluded that the lease required payment for actual audited depreciation costs instead of the negotiated rates. Since the Board explicitly premised its conclusion that GSA's counterclaim was substantially justified on a finding to the contrary, all support for GSA's position on its counterclaim evaporates.
 
 
 18
 Second, the Board erred in examining only the conduct of the contracting officer when evaluating the agency's position. The Board is "to look at the entirety of the government's conduct," that is the agency's litigating position as well as its administrative actions. Chiu v. United States, 948 F.2d 711, 714-15 (Fed.Cir.1991). The Board cannot ignore the fact that GSA's attorneys should have known that the counterclaim addressed an issue decided during the entitlement portion of the proceedings and that it would be barred by law of the case jurisprudence. Indeed, the Board dismissed GSA's first collateral attack on its entitlement decision on just these grounds. Gilroy-Sims & Assocs., Ltd., 90-3 B.C.A. (CCH) p 23,132, at 116, 147-48. Finally, the GSA contracting officer's lack of bad motive is not evidence that GSA's position was objectively reasonable. Given that the contracting officer's claim was not logical when issued and that GSA maintained it as a counterclaim even though the counterclaim was legally barred, we cannot hold that the Board's decision finding GSA's position substantially justified was based on substantial evidence.
 
 
 19
 Consequently, we reverse the Board's finding that GSA's position on the counterclaim was substantially justified and remand to the Board for further proceedings to determine the amount of EAJA attorney's fees and expenses due Gilroy-Sims.
 
 
 20
 No costs.
 
 
 
 *
 Administrative agency includes the boards of contract appeals for purposes of the EAJA. 5 U.S.C. § 504(b)(1)(C) (1988)