Zulema De La Garza PERALES,
et al., Plaintiffs–Appellees
Cross–Appellants,

v.

Richard CASILLAS, et al., Defendants–
Appellants Cross–Appellees.

No. 90–5590.

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1992.

Ronald F. Ederer, U.S. Atty., San Antonio, Tex., Richard M. Evans, Asst. Dir. Dept. of Justice, Mary K. Doyle, Michael J. Singer, Civ. Div., Appellate Staff, Dept. of Justice, Washington D.C., for defendants-appellants cross-appellees.

Lee J. Teran, San Antonio, Tex., Barbara Hines, Austin, Tex., for plaintiffs-appellees cross-appellants.

Before CLARK, Chief Judge, GOLDBERG, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from the second round of litigation initiated by several individual plaintiffs and a class of illegal aliens (hereinafter collectively referred to as plaintiffs). Plaintiffs brought a class-action lawsuit against the Immigration and Naturalization Service (INS) and several individual officials (defendants) requesting declaratory, injunctive and mandamus relief requiring the INS to change its method of considering petitions for voluntary departure and employment authorization for certain categories of illegal aliens. Plaintiffs were successful in the district court; however, on appeal to this Court, the challenged portions of the injunction were vacated. *Perales v. Casillas*, 903 F.2d 1043, 1053 (5th Cir.1990) (*Perales I*). While the appeal was pending, plaintiffs were awarded attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Defendants have appealed the award of fees in light of their successful appeal of the merits portion of this case. We vacate and remand the fee award for recalculation in light of our decision in *Perales I.*

### Facts And Proceedings Below

All plaintiffs are married to United States citizens who filed initial immigration petitions on their behalf. Approval of these petitions does not entitle the aliens to visas, however. Because the aliens entered the United States illegally, additional approval from the United States Consulates abroad is required, 8 U.S.C. § 1255a(c), which can take many months. One key requirement for consular approval is a showing that the aliens are not likely to become "public charges." 8 U.S.C. § 1182(a)(4). While awaiting permanent residence status, the aliens are placed in limbo for as long as three years during which time they are subject to deportation by the INS.

The INS has historically followed a general pattern of allowing qualified aliens to remain in the United States under a grant of voluntary departure. In keeping with that policy, the San Antonio INS office (officials of which are defendants herein) routinely granted requests prior to 1984 for voluntary departure and employment authorization. At times, employment authorization was issued automatically even if the alien did not request it. For reasons undisclosed, however, between August 1984 and May 1987 the office failed to adjudicate requests for voluntary departure, and thus effectively also denied all requests for employment authorization, for which voluntary departure status is a prerequisite. Compounding the aliens' distress was the passage in 1986 of the Immigration Reform and Control Act, which makes it unlawful for employers to hire undocumented workers. 8 U.S.C. § 1324a. In the wake of this legislation, plaintiffs faced something of a legal "Catch-22": without documentation, plaintiffs found it difficult to lawfully support their families until visa applications were approved; moreover, without employment, plaintiffs faced denial of their visa applications and exclusion from the United States because of their inability to prove that they were not likely to become public charges.

Plaintiffs filed suit in 1986, seeking declaratory, injunctive and mandamus relief against the INS and several officials. The thrust of plaintiffs' claims was that the INS's failure to act on their requests for voluntary departure and employment authorization violated the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, and the Fifth Amendment. Class certification was granted on January 6, 1988.[1]

On November 14, 1988, after a two-day bench trial, the district court issued a lengthy order granting permanent injunctive relief. After first rejecting several jurisdictional arguments raised by the INS

---

1. The certified class of plaintiffs consists of: "All immigrant visa applicants who reside within the San Antonio, Texas INS district and are immediate relatives of United States citizens or within sixty days of visa availability and who have applied or will apply for employment authorization and (1) whose applications for employment authorization [from the INS] have been or will be denied, or (2) whose applications for employment authorization have not been timely adjudicated."

(mootness, sovereign immunity and standing), the court announced that it was awarding relief under the APA rather than the Fifth Amendment. The court then issued a four-part permanent injunction providing: (1) All requests for voluntary departure shall be adjudicated within 60 days, as required by 8 C.F.R. § 274a.13(d),[2] and applications for voluntary departure and employment authorization shall be considered jointly; (2) all denials of voluntary departure shall be made in writing, in compliance with 8 C.F.R. § 274a.13(c);[3] (3) defendants shall be prohibited from denying requests for employment authorization and voluntary departure on certain enumerated grounds;[4] and (4) the INS shall be prohibited from initiating deportation proceedings against class members in retaliation for their requests for relief.[5] The court then concluded that the defendants' position in the lawsuit was not "substantially justified," and thus the plaintiffs were accordingly entitled to attorneys' fees under the EAJA. Plaintiffs correspondingly filed a motion for attorneys' fees on December 5, 1988.

Subsequently, on January 13, 1989, defendants appealed parts 3 and 4 of the injunction to this Court. Vacating the challenged portions, this Court held that courts may not circumscribe the discretion granted to the INS in setting factors for reviewing requests for employment authorization and voluntary departure; further, the injunction prohibiting retaliation against all class members was determined to be overbroad. *See Perales I*, 903 F.2d at 1050–51, 1053.

Meanwhile, pending the appeal on the merits, the district court referred the application for attorneys' fees to a United States Magistrate, pursuant to 28 U.S.C. § 636(b)(1). On March 14, 1990, the magistrate issued a lengthy order focusing primarily on the amount of the award, stating, "[T]hat the government's position was not substantially justified, is clear from the District Court's findings." Addressing an award of fees under the EAJA, the magistrate first observed the two-pronged aspect of the statute. Where the plaintiff prevails and the government's position was not "substantially justified," an award of fees of $75 per hour is permitted; this rate is intended to be a maximum, and may be increased only for cost of living changes or special factors. 28 U.S.C. §§ 2412(a), (d)(1)(A), (d)(2)(B). However, if the government acted in bad faith, "reasonable fees" (i.e., fees not limited by a specified maximum rate) may be awarded. 28 U.S.C. § 2412(b). The magistrate determined that an award of fees under section 2412(b) was warranted because defendants had acted in bad faith by: continuing to refuse to adjudicate requests for voluntary departure for over a year into the litigation; agreeing to change the policy, and then reneging; and attempting to deport class members in retaliation for the lawsuit. Consequently, the magistrate concluded that an award of fees at the market rate of $125 per hour was appropriate. The magistrate *alternatively* addressed fees under section 2412(d), and concluded that an enhancement to the statutory base rate of $75 per hour for cost of living increase was appropriate, and further, that the adjustment should be made as of the date of the award, and not historically (i.e., per year as the services were rendered). An overall rate of $95 per hour was determined to be appropriate under section 2412(d). Additional enhancements based on special expertise and limited availability of attorneys were rejected, however.

---

**2.** 8 C.F.R. § 274a.13(d) was amended in response to the Immigration Reform and Control Act of 1986 to become effective May 1, 1987, during the pendency of this litigation.

**3.** This regulation was also amended to become effective May 1, 1987.

**4.** The district court enjoined the INS from considering "economic need," the impact of an alien's employment on the job market, the man-

ner of entry (as a sole basis for denial of relief), the alien's willingness to leave the United States, the condition of the alien's spouse, collateral asylum requests, and the absence of economic necessity or humanitarian concerns.

**5.** While the litigation was pending, some class members were placed in deportation proceedings, although there was no evidence of marriage fraud or criminal conduct. Not one of these aliens was deported, however.

After resolving the issues of which hours were to be compensated and which expenses were to be reimbursed, the magistrate ordered an award of $111,631.25 in attorneys' fees (893.05 hours at $125 per hour), $12,180.10 in costs, and $2,745.45 in expenses.

On April 2, 1990 (outside the March 30 deadline),[6] defendants filed objections to the magistrate's order. Plaintiffs filed both a motion to extend and their objections on the same day. In attempting to select a standard for reviewing the magistrate's order, the district court raised the question of under which section of the Federal Magistrates Act, 28 U.S.C. § 631 *et seq.*, the magistrate had proceeded. Section 636(b)(1)(A) allows a judge to designate a magistrate to hear and determine any nondispositive pretrial matter. An order issued by a magistrate acting under this provision is reviewed by the district court under the clearly erroneous standard. 28 U.S.C. § 636(b)(1)(A). On the other hand, section 636(b)(1)(B) allows a judge to designate a magistrate to issue recommendations on dispositive matters, which are to be reviewed *de novo* by the district court. Section 636, however, is silent on which standard should be applied to magistrate rulings on requests for attorneys' fees. After noting a split among the various courts that have considered the issue, the district court finally settled on the clearly erroneous standard. *See, e.g., Johnson v. Old World Craftsmen, Ltd.*, 638 F.Supp. 289, 291 (N.D.Ill.1986) (concluding that the clearly erroneous standard should apply). *But see West v. Redman*, 530 F.Supp. 546, 548 (D.Del.1982) (finding attorneys' fee issue to require *de novo* review). Turning to the merits of defendants' objections, the court first noted that the objections were untimely, but then considered them anyway. Despite the court's detailed analysis on the appropriate standard of review, the court ultimately concluded that the magistrate's order "should be affirmed in all respects" even under the more rigorous *de novo* standard of review.

Defendants now bring the present appeal, claiming that their success on the merits in *Perales I* decisively proves that they were "substantially justified" below; further, if they were "substantially justified," they could not have acted in bad faith. Accordingly, defendants request this court to vacate the award of fees. In the alternative, defendants request a remand for recalculation in light of plaintiffs' diminished degree of success. Plaintiffs challenge the alternate award under section 2412(d), claiming that the district court erroneously failed to grant an enhancement based on the attorneys' specialized skill and limited availability.

### Discussion

**I. Preserving Rights to Appeal: Objections to Magistrate's Report**

Plaintiffs urge this Court to treat defendants' failure to timely object to the magistrate's order as a waiver of defendants' right to appeal. Plaintiffs' theory stems from the Supreme Court's recent ratification of the "waiver rule," previously adopted by this Court in *United States v. Lewis*, 621 F.2d 1382 (5th Cir.1980), *cert. denied*, 450 U.S. 935, 101 S.Ct. 1400, 67 L.Ed.2d 370 (1981), whereby failure to object to a magistrate's report issued under section 636(b)(1) acts as a waiver of appellate rights. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 473, 88 L.Ed.2d 435 (1985). In *Lewis*, one defendant's appeal was dismissed on the ground that his failure to object to the recommendations contained in the magistrate's report waived his right to appeal. *Lewis*, 621 F.2d at 1386. However, the *Lewis* rule was modified by this Court in *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982) (en banc), which held that no limitation of the right to appeal shall result *unless the magistrate informs the parties* of the objection deadline.

---

**6.** The magistrate issued his order on March 14. Although 28 U.S.C. § 636(b)(1) requires objections to the magistrate's report to be filed within ten days, the district court extended the deadline to March 30, allowing an additional six days for postal service to and from the parties. *See* Fed.R.Civ.P. 6(e).

Plaintiffs conceded at oral argument that the magistrate's report did not contain a *Nettles* notice. However, plaintiffs argue that defendants were on notice of the deadline because the local rules of the Western District of Texas mimic the provisions of the Federal Magistrates Act. *See* Local Rules, App. C, Rule 4, W.D. Texas. Even if defendants were clearly on notice of the deadline via the local rules, we are seemingly bound by *Nettles* to hold that defendants' tardy filing placed no limitation on their right to appeal because the *magistrate* did not inform the parties of the filing deadline for objections. *See Nettles, supra,* 677 F.2d at 410. Moreover, we do not believe that tardy, as opposed to absent, objections should waive the right to appeal, at least under the circumstances in this case. The rationale behind this Court's opinion in *Lewis* was distaste for the "sandbagging" practice in which defendants circumvent district judges and raise objections for the first time on appeal. *Nettles,* 677 F.2d at 410. Here, defendants missed the deadline by one business day; more importantly, the district court considered and rejected defendants' objections on their merits under a *de novo* review. There was no possible prejudice to plaintiffs. Accordingly, the lack of *Nettles* notice and the fact that the purpose behind the waiver rule would not be served by imposing it here combine in leading us to reject plaintiffs' contention that defendants have waived their appellate rights. We turn now to the merits.

## II. Plaintiffs' Entitlement to Attorneys' Fees

### A. Bad Faith

■ Although the litigants focus their attention on 28 U.S.C. § 2412(d) and the "substantial justification" issue, the district court affirmed the magistrate's award of fees to plaintiffs under *section 2412(b)* of the EAJA, which permits an award of fees against the government "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). We thus first consider whether the district court abused its discretion in

awarding fees under this provision. *See Kinnear–Weed Corp. v. Humble U.S. & Refining Co.,* 441 F.2d 631, 637 (5th Cir.) (adopting abuse of discretion standard for reviewing award of fees based on a determination of bad faith), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971).

■ Section 2412(b) incorporates the "American rule" for fee-shifting, which permits a fee award only when the losing party acted "in *bad faith,* vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (emphasis added). The court may consider conduct both during and prior to the litigation, although the award may not be based solely on the conduct that led to the substantive claim. *Sanchez v. Rowe,* 870 F.2d 291, 295 (5th Cir.1989). Therefore, defendants' failure to adjudicate voluntary departure and employment authorization requests, in and of itself, does not implicate section 2412(b). The district court awarded fees at the market rate of $125 per hour under this provision based on the magistrate's following findings of bad faith: (1) the INS used inappropriate factors to adjudicate requests for relief; (2) the INS retaliated against class members through deportation proceedings; and (3) the INS failed to timely adjudicate requests for relief after promising to change this policy.

■ In opposition to plaintiffs' claims of bad faith, defendants merely rest on the laurels of their victory in *Perales I,* 903 F.2d at 1053, which they claim vindicated their position and vitiated any finding of bad faith. Such an argument may read *Perales I* too broadly. However, in light of "the district court's superior understanding of the litigation," *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), and because the district court was unaware of plaintiffs' ultimate degree of success at the time it passed on plaintiffs' request for fees, we remand for the district court to reevaluate its determination of bad faith in light our holding in *Perales I.* In that regard, we offer the

following observations. As plaintiffs point out, the injunction against class-wide retaliatory deportation was struck down as overbroad and not as necessarily entirely unwarranted: "[t]he district court's fundamental error is the attempt to issue a class-wide restraint on the basis of a quintessentially individual problem." *Perales I*, 903 F.2d at 1053. Thus, the magistrate's finding that deportation proceedings were instituted (although not completed) against certain *individuals* was not reversed in *Perales I*, and might arguably still support a finding of bad faith. Moreover, although defendants' disregard of INS regulations was a basis for the suit, the fact that the regulations were still disregarded well over a year into the lawsuit, in contravention of the opinion of the INS Deputy District Director, also might support a finding of bad faith. Finally, the magistrate noted that defendants agreed to change their policy, then again slipped back into inaction without justification. Viewing these actions in the aggregate, the magistrate concluded that "[t]his blatant abuse of the immigration process and flagrant disregard of this judicial proceeding constitutes bad faith and warrants an award of attorneys' fees at the market rate under Section 2412(b)."

## B. Substantial Justification

■ Plaintiffs alternatively based their claim for fees on 28 U.S.C. § 2412(d), which provides that the district court may award fees to the prevailing party when the government's position was not "substantially justified" and there are no other special circumstances that would otherwise make a fee award unjust. Plaintiffs were awarded $95 per hour under this provision. A finding that defendants did *not* act in bad faith does not resolve the "substantial justification" issue, because the standards are different. *See Barry v. Bowen*, 825 F.2d 1324, 1334 (9th Cir.1987). However, if on remand the district court upholds the finding of bad faith, then it need not address this issue since plaintiffs received the higher market rate of $125 per hour under the alternative provision, section 2412(b).

Eligibility for a fee award under the EAJA requires, at a minimum, that the claimant be a "prevailing party"; that the Government's position was not "substantially justified"; that no "special circumstances make an award unjust"; and that any fee application be submitted to the court within 30 days of final judgment and be supported by an itemized statement. *Commissioner INS v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990). Only the application of the "substantially justified" condition is at issue here.

Defendants claim that this Court's ruling in *Perales I* indicates that their actions were substantially justified.[7] Although defendants do not contest plaintiffs' status as the prevailing parties, they argue that plaintiffs were victorious on only the insignificant portions of their claim. Therefore, viewing the case as an "inclusive whole," defendants argue that plaintiffs are entitled to no fees. Plaintiffs, on the other hand, argue that even if portions of defendants' litigation position were substantially justified, their underlying actions were not. Accordingly, plaintiffs seek affirmance of fees for the entire litigation.

■ The district court's determination of whether the government's position was "substantially justified" is reviewed for abuse of discretion, *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2548–49, 101 L.Ed.2d 490 (1988);[8] however, underlying conclusions of law are reviewed *de novo*

---

7. Plaintiffs argue in rebuttal that defendants have waived this defense by failing to raise it below. However, a fair reading of defendants' objections to the magistrate's report raises the theory that defendants should not be liable for fees on disputes they ultimately won, which is the focus of their "substantial justification" argument on appeal. In light of the fact that the magistrate alluded to the substantial justification issue only in passing, and in view of defen-

dants' success in *Perales I*, we believe defendants adequately preserved this issue.

8. *Underwood* apparently overruled many circuit courts' decisions holding that the *de novo* standard governed review of whether the government's legal position was substantially justified. *See Underwood*, 108 S.Ct. at 2560–61 (White, J., dissenting).

and conclusions of fact are reviewed for clear error. *SEC v. Fox*, 855 F.2d 247, 251 (5th Cir.1988) (construing *Underwood*). In *Underwood*, the Supreme Court interpreted "substantially justified" as meaning " 'justified in substance or in the main'— that is, justified to a degree that could satisfy a reasonable person." *Id.* 108 S.Ct. at 2550. This definition, concluded the Court, comports with the "reasonable basis both in law and fact" adopted by the vast majority of circuit courts, including the Fifth Circuit. *See, e.g., Hanover Building Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1015 (5th Cir.1984).

■ Defendants rely heavily on *Jean, supra*, 110 S.Ct. 2316, which they claim establishes a "holistic" approach to the "substantially justified" determination. Because plaintiffs' residual success was mandated by amendments to the immigration regulations passed during the pendency of the litigation, defendants contend that plaintiffs' victory does not defeat a finding of substantial justification. Rather, defendants argue that their successful appeal of the "more onerous" portions of the injunction demonstrates that they were "substantially justified" overall. Defendants read *Jean* too broadly. In *Jean*, the Supreme Court held that the government could not avoid fees for litigating the fee dispute ("fees for fees") by claiming that, although it lost below, its position in the fee litigation was substantially justified. Rather, the Court concluded, a "substantially justified" determination properly focuses on the governmental misconduct giving rise to the litigation, as well as on the government's litigation position. *Jean*, 110 S.Ct. at 2323; *see also Fox*, 855 F.2d at 251–52.

Under *Jean*, then, defendants' success in *Perales I* is not necessarily determinative of the "substantially justified" issue; the underlying misconduct giving rise to the suit must be also evaluated. In fact, the district court did evaluate that misconduct at length, concluding that "it should be abundantly clear that it is the finding of this Court that defendants' position in this lawsuit was not substantially justified."

However, at the time of its decision, the district court did not have the benefit of our opinion in *Perales I*. Despite our favorable ruling for defendants in *Perales I*, we cannot say as a matter of law that defendants' position both prior to and during the litigation was substantially justified so as to deprive plaintiffs of attorneys' fees entirely. Therefore, we are compelled to return this case to the district court for reevaluation of the substantial justification issue in light of plaintiffs' diminished degree of success. In that regard, we observe that, despite defendants' cries of victory, plaintiffs are still the prevailing parties; their lawsuit changed the operations of the INS, producing a significant benefit for the members of the class.

## III. Apportionment of Fees

If the district court determines on remand that plaintiffs are still entitled to fees under the EAJA, the next question the district court must address is whether plaintiffs are entitled to fees for the entire litigation, or whether the fees should be apportioned based on plaintiffs' diminished degree of success as a result of *Perales I*. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), the Supreme Court announced that the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. In particular, the Court offered the following guidance:

"Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* 103 S.Ct. at 1943.

Because the district court did not have the opportunity to properly consider the relationship between the extent of plaintiffs' ultimate success and the amount of the fee award, we are unable to affirm the decision below. Accordingly, if on remand the district court finds plaintiffs are entitled to fees under the EAJA, the court must still recalculate plaintiffs' fees in light of our opinion in *Perales I* and following the teachings of *Hensley.*

## IV. Adjustments

If on remand plaintiffs are found entitled to fees but a market rate fee is found inappropriate under a bad faith theory, the district court must then consider plaintiffs' requests for adjustments under section 2412(d) of the EAJA. Generally, in determining the amount of attorneys' fees, the district court enjoys discretion. *See Underwood, supra,* 108 S.Ct. at 2553. The EAJA limits that discretion, however, mandating that an award not exceed $75 per hour "unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The amount of the cost-of-living increase is keyed to the base year, which is 1981. *Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir.1988).[9] In this case, after adjusting the $75 an hour statutory rate for the then-current year, taking into consideration the testimony of several expert witnesses, the magistrate, in determining the alternate award, arrived at an adjusted rate of $95 per hour for all hours "whenever expended." The district court declined, however, to further adjust the rate based on the special expertise or limited availability of plaintiffs' counsel.

### A. Cost-of-Living Adjustment

Defendants do not now contend that a cost-of-living increase is not warranted, or that the rate selected by the district court is excessive. Rather, defendants focus on the timing of plaintiffs' attorneys' work. Defendants argue, as they did below, that a blanket fee for all hours expended is not appropriate, and contend that the cost-of-living increase should be calculated from 1981 for each year, separately, since the hours began accumulating in 1985 ("historic rates"). Hence, defendants contend that in setting a cost-of-living adjustment, the court may consider only inflation that occurred prior to the attorneys' performance and may not consider increases that occurred subsequent to the work performed. In support of this contention, defendants rely on *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986), which held that the United States is immune from an interest award, absent express congressional consent. Justifying current rather than historic rates because of delay in relief, defendants contend, is tantamount to awarding interest.

■ Defendants correctly construe *Shaw* as holding that principles of sovereign immunity dictate, as a general proposition, that interest awards against the United States are prohibited. However, we have recognized that this general rule admits of several exceptions,[10] only one of which is potentially relevant in this case; namely, where the United States has expressly consented to such an award, sovereign immunity does not bar interest. *Shaw,* 106 S.Ct. at 2961. The focus of this exception is whether the legislation giving rise to the cause of action expressly sub-

---

9. The EAJA was originally enacted in 1981. In 1985, the EAJA was reenacted to remove the sunset provision; the $75 per hour statutory maximum remained unchanged. Despite the amendment, the courts recognized that the intended effect of the reenactment was to treat the act as if it had never expired. *See Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir.1988). On this basis, the majority of federal courts have held that the cost-of-living adjustment should be measured from the date of enactment of the EAJA in 1981 and not from the reenactment in 1985. *Id.*

10. Takings under the Fifth Amendment are subject to interest awards. *See Shaw* 106 S.Ct. at 2963 & n. 5. In addition, the United States may waive immunity from interest by contract. *Id.* The Supreme Court has also recognized that if a governmental agency functions as a commercial entity, the agency may be subject to prejudgment interest. *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 1974, 100 L.Ed.2d 549 (1988).

jects the government to interest payments. *McGehee v. Panama Canal Comm'n*, 872 F.2d 1213, 1215 (5th Cir.1989).

In analyzing whether Congress has waived the immunity of the United States in a particular statute, we must construe the statute strictly in favor of the sovereign, and not enlarge any waiver found therein beyond what the language requires. *Shaw*, 106 S.Ct. at 2963. The no-interest rule provides an added gloss of strictness upon these usual rules of construction. *Id.* Driving home the point of explicit waiver, the Supreme Court admonished in *Shaw:*

> " '[T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.' " *Id.* (quoting *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947)).

Underscoring its point, the Court observed that "[w]hen Congress has intended to waive the United States' immunity with respect to interest, it has done so expressly." *Id.*[11]

**11.** The Court cited several statutes in support of this observation: "28 U.S.C. § 2411 (expressly authorizing prejudgment and postjudgment interest payable by the United States in tax-refund cases); 31 U.S.C. § 1304 (appropriating funds for interest on certain district court judgments); 26 U.S.C. § 7426(g) (providing for interest in cases of wrongful levy by Internal Revenue Service)." *Shaw*, 106 S.Ct. at 2963 n. 6.

**12.** Our holding in *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1096 n. 26 (5th Cir. 1982), *rev'd on other grounds, International Woodworkers of America v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir.1986), in which we recognized that the prevalent practice is "to use current rates rather than historic rates and thus to compensate counsel for inflation and delay in receipt of payment," is inapposite because that case did not involve a suit against the federal government. In *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 109 S.Ct. 2463, 2468 n. 3, 105 L.Ed.2d 229 (1989), the Supreme Court made clear that the "no-interest" rule applies only

■ We conclude that this is an issue of first impression in this Circuit.[12] Initially, we recognize that many courts have awarded a cost-of-living adjustment under the EAJA based on the current Consumer Price Index (CPI) without regard to the year in which the services were performed. *See, e.g., Garcia v. Schweiker*, 829 F.2d 396, 402 (3d Cir.1987) (reasoning that attorneys "should not have the purchasing power of their fees eroded by such inflation"); *United States v. Boeing Co., Inc.*, 747 F.Supp. 319, 322–23 (E.D.Va.1990) (noting that the CPI "should serve as a disincentive to the government to prolong the litigation process"); *Rutledge v. Sullivan*, 745 F.Supp. 715, 717 (S.D.Ga.1990) (concluding that the award should compensate for the time value of money and the effects of inflation). The apparent motivating factor behind each of these decisions was a desire to compensate the attorney for the delay between performance and payment. None of these courts, however, addressed the question of whether such awards impermissibly required the United States to pay interest.

Turning to the language of the EAJA, as mandated by *Shaw*, we observe that it does expressly provide for the award of *postjudgment* interest, but only in certain circumstances.[13] Moreover, although the EAJA does not use the phrase "prejudg-

when the liability of the federal government is at issue. Outside the context of federal immunity, the Court stated that "we see no reason why compensation for delay cannot be included" within attorneys' fee awards. *Id.* Although *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988) did involve fees under the EAJA against the federal government, there we did not reach the issue of interest. Instead, we simply recognized that the cost-of-living adjustment must be based on inflation since 1981 and not 1985. *Id.* We then remanded to the district court for recalculation consistent with that holding. *Id.* at 1085.

**13.** With regard to postjudgment interest, the EAJA provides:

> "If the United States appeals an award of costs or fees and other expenses made against the United States under this section and the award is affirmed in whole or in part, interest shall be paid on the amount of the award as affirmed." 28 U.S.C. § 2412(f).

ment interest," it does allow the $75 maximum rate to be increased based on the cost of living or special factors. In *Hong–Yee Chiu v. United States,* 18 Cl.Ct. 567, 572 n. 2 (1989), the Court of Claims found such language sufficient to justify adjusting the $75 rate as of the date of the award, rather than as of the date services were rendered. The court considered and rejected the arguments that defendants now make, observing that

"[i]f the $75 per hour rate is not adjusted for inflation between the time the work is performed and the time the award is made, the value in real dollars of the award would decrease during that period and plaintiff would end up bearing more of the actual economic costs associated with securing attorney representation and less would be shifted to the government." *Id.* at 571.

Distinguishing the Supreme Court's prohibition in *Shaw* of interest awards on the ground that the statute interpreted in *Shaw* (42 U.S.C. § 2000e–5(k)) merely authorized the award of "a reasonable attorney's fee," the court continued:

"The attorneys' fee provision in the EAJA ... contains the very link found missing in *Shaw.* The EAJA explicitly provides for adjustment to the $75 per hour statutory rate for cost of living increases, i.e., there is an affirmative authorization by Congress permitting the grant of a COLA to the $75 per hour maximum rate. Therefore, the proper focus of inquiry herein is not whether Congress waived sovereign immunity to permit a COLA to the $75 statutory rate but rather, in effect, whether Congress precluded the court from considering inflation that occurred subsequent to performance of the attorney work when establishing a COLA. As explained above, Congress did not." *Id.* at 572 n. 2 (citation omitted).

Despite its logical appeal, we find the analysis in *Hong–Yee Chiu* to have ignored the clear directive in *Shaw.* The Supreme Court could not have more clearly stated that waivers of sovereign immunity must be strictly construed; therefore, the presumption is against allowing interest awards. Moreover, we cannot simply sidestep this difficult question by calling the award a "cost-of-living adjustment" rather than an interest award. "[W]hether the loss to be compensated by an increase in a fee award stems from an opportunity cost or from the effects of inflation, the increase is prohibited by the no-interest rule." *Shaw,* 106 S.Ct. at 2965. Accordingly, we look not to whether Congress *precluded* a current adjustment for all hours, but whether Congress *expressly allowed* such awards. We find no language in the EAJA authorizing fees at current adjusted rates for all hours whenever expended. The narrowest reasonable construction of the cost-of-living provision in the EAJA leads us to conclude that this was an attempt to allow the statute to be self-updating in light of the modern realities of inflation. This purpose is accomplished through the award of historic rates; anything more treads impermissibly across the line and is tantamount to interest. Therefore, in keeping with *Shaw*'s mandate of not enlarging the waiver of sovereign immunity "beyond what the language requires," we hold that cost-of-living adjustments under the EAJA must be made to reflect the appropriate rate in the year in which the services were rendered.

A simple example illustrates the logic of what may seem to be a nice distinction. If an attorney provides services in 1991 and is compensated in that same year, adjusting the $75 statutory rate based on increases in the cost of living between 1981 and 1991 provides no concerns of prohibited interest. The adjustment operates simply to update the EAJA's statutory rate; delay is not a consideration. Suppose instead the attorney provides services in 1988 and the appropriate adjusted rate is then $100 per hour; however, because of the delays normally attendant on litigation, the fee award is not made until 1991. An award of $100 per hour for those services is expressly permitted under the EAJA. If the court goes further and awards the attorney $110 per hour to compensate for inflation not only between 1981 and 1988, but also between 1988 and 1991, then the court has in

effect awarded interest for the three-year delay in payment. We do not find that the EAJA expressly countenances such a result. Accordingly, following the teachings of *Shaw,* we conclude that cost-of-living compensation of attorneys under the EAJA merely for the delay in payment is a prohibited award of interest against the United States.

Turning to the issue of whether special factors may independently justify departing from the historic rates rule, we note that we have previously recognized, albeit in *dicta,* that delay in payment may be a special factor within the meaning of the EAJA. *Baker v. Bowen,* 839 F.2d 1075, 1082–83 (5th Cir.1988). However, in *Baker* we also observed that such a factor will arise only rarely and will be unique to the fact situation of the particular case. *Id.* at 1083. In this case, the magistrate determined that the delay anticipated by plaintiffs before receipt of the award "cannot be considered normal delay." This determination was based on the already protracted nature of the litigation and on the anticipation that defendants would continue to appeal the merits to the Supreme Court and appeal the fee award to this Court, creating a delay of at least a year or more before plaintiffs would receive the award. Accordingly, he recommended that the adjusted rate be applied to all of plaintiffs' hours, whenever expended.

Despite our passing recognition in *Baker* that delay may justify increasing the EAJA's statutory rate, we have not had the occasion to define the boundaries of delay *vis-à-vis* the EAJA's "special factor" provision. Several courts have concluded that the "special factor" provision in the EAJA allows an increase in the statutory cap to compensate parties for prolonged delay in payment. *See, e.g., Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 219–20 (D.C.Cir.1984) (allowing slight increase in cap because payment of award occurred four years after services were rendered, where delay was partly attributa-

ble to agency's six requests for stays). Even after the Supreme Court's sweeping prohibition in *Shaw* of interest awards against the United States, the D.C. Circuit adhered to this view, noting that the EAJA expressly gives the courts leeway to adjust the statutory maximum in the presence of a "special factor." *Wilkett v. ICC,* 844 F.2d 867, 876 (D.C.Cir.1988). However, the court made clear its position that routine delay alone does not justify increasing the fee. *Id.*

We agree that some forms of delay may justify enhancing the statutory base rate under the EAJA. However, we recognize, as did the court in *Wilkett,* that some delay in payment of fees is and has long been nearly always inevitable. Therefore, the normal delay attendant on litigation of a fee request can hardly be called a "special factor." Nor will we permit an increase in the cap in every instance of complex litigation where the delay is unusually long. Instead, we believe that delay will become a special factor only when it is truly exceptional and not attributable to negligence or improper conduct of the prevailing party.[14]

We do not find the delay in this case to have been truly exceptional. Any delay in payment experienced by plaintiffs in this case has been caused merely by the complexity of the litigation and defendants' appeals to this Court. Were we to conclude that such delays are "exceptional," we would remove any real meaning from the term *"special* factor." Accordingly, we hold that the district court, in its alternate award, abused its discretion in compensating plaintiffs' attorneys above the properly adjusted per hour statutory maximum because of delay in payment.

### B. Enhancement of Fees: Specialization and Availability

Plaintiffs argue in respect to the alternative award under section 2412(d) that the district court abused its discretion when it refused to enhance the section 2412(d) fee due to the attorneys' expertise

---

**14.** This conclusion also reinforces our view that cost-of-living increases must be based on historic rates. If current rates were applied to all hours in an attempt to compensate for the delay in payment, a special delay factor would be superfluous.

and limited availability. Plaintiffs point to the attorneys' fluency in Spanish, as well as their board certification in immigration law as evidence that the attorneys possessed special expertise. Additionally, plaintiffs assert that few attorneys are willing to engage in this sort of litigation; thus, there is limited availability. These special factors, contend plaintiffs, warrant an increase in the base fee. The magistrate considered these arguments at length, evaluating the testimony of numerous experts, but ultimately rejected them.

In *Underwood, supra,* the Supreme Court interpreted these special factors as referring to attorneys qualified

> "in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language."
> *Underwood,* 108 S.Ct. at 2554.

Defendants concede that patent law appropriately represents a specialized area because of the specific technical training required of members of the Patent Bar.[15] However, defendants argue that immigration law is no more a specialty than family law, or bankruptcy, or numerous other areas of the law. Further, defendants point out that the magistrate found no showing of a lack of attorneys able to handle this type of litigation.

Although at least one court has apparently recognized that immigration specialty can constitute a "special factor" under the EAJA, *Ramon–Sepulveda v. INS,* 863 F.2d 1458 (9th Cir.1988) (dicta), we believe that the Supreme Court in *Underwood* intended to distinguish nonlegal or technical abilities possessed by, for example, patent lawyers and experts in foreign law, from other types of substantive specializations currently proliferating within the profession. In a sense, every attorney practicing within a narrow field could claim specialized knowledge. Although the district court found that "[i]mmigration law is a specialty area requiring an extensive and current knowledge of applicable statutes and regulations," such is true for virtually any area of law, particularly those involving the intricate federal statutory schemes that typically give rise to awards under the EAJA.

■ In *Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir.1988), we considered whether attorneys specialized in social security litigation merited an enhancement to the statutory rate. In remanding to the district court for further findings, we warned that the

> "district court must be careful to distinguish the limited availability of attorneys from the special expertise of certain attorneys or the mere unattractiveness of the field.... [T]he ultimate issue is whether there is reason to believe that social security claimants with colorable claims will actually be disadvantaged by denial of access to the courts because of lack of available representation." *Id.* at 1084–85.

Thus, *Baker* teaches that an increased rate should be awarded for special expertise/limited availability only if: (1) the number of competent attorneys who handle cases in the specialized field is so limited that individuals who have possibly valid claims are unable to secure representation; *and* (2) that by increasing the fee, the availability of lawyers for these cases will actually be increased.[16] *Id.* at 1085.

---

**15.** Patent lawyers must have certain scientific and technical qualifications, which make them uniquely qualified to render a valuable service. *See Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963). In addition, the Patent and Trademark Office administers a separate examination for admission to the Patent Bar, further restricting the pool of potential attorneys.

**16.** Plaintiffs urge this Court to treat special expertise and limited availability as separate "special factors." Such a position, however, would contradict our holding in *Baker.* Furthermore, the enhancement of fees under the EAJA is not designed to reward certain attorneys for possessing unique skills, but rather to encourage attorneys in areas of high demand to represent claimants covered by the EAJA. Accordingly,

The district court below conceded that plaintiffs' attorneys possessed skill in immigration practice as well as useful fluency in Spanish. The court also considered testimony from several attorneys who testified that increasing the fee would increase the availability of lawyers willing to handle this type of litigation. However, the court found no limited availability of qualified attorneys to handle immigration cases, noting that the problem is not that the attorneys would not work for $75 per hour, but that they often could not collect *any* fee from their indigent clients. The court also found that plaintiffs' experts were unable to identify any persons with colorable claims that remained unrepresented. Accordingly, the district court rejected an increase based on expertise or limited availability.

We conclude that the district court's findings under the *Baker* test are not clearly erroneous. We therefore hold that the district court did not abuse its discretion by refusing enhancements based on specialization or limited availability in respect to its alternative award under section 2412(d).

### Conclusion

The Supreme Court in *Hensley, supra,* admonished that a "request for attorney's fees should not result in a second major litigation." *Hensley,* 103 S.Ct. at 1941. Nevertheless, because of the unusual posture of this dispute, we are compelled to vacate the award of fees to plaintiffs' attorneys and return this case to the district court for reconsideration consistent with our holding in *Perales I* and the guidelines given here.

On remand, the court should determine first whether defendants' conduct prior to and during the litigation was such as to sink to the level of bad faith within the meaning of 28 U.S.C. § 2412(b). If it is determined that defendants are not shown to have acted in bad faith, then the district court must evaluate whether defendants' success on the merits entitles them to a finding of substantial justification for the litigation as a whole or in part. In the event the district court determines that plaintiffs are entitled to at least partial fees, the district court, consistent with the teachings of *Hensley, supra,* must apportion those fees based on plaintiffs' degree of success. With respect to enhancement of fees under section 2412(d), we hold that the district court erred in applying a current cost-of-living adjustment to all hours, and instruct the court, to the extent any award on remand may be based on section 2412(d), to segregate the attorneys' hours by year and apply the appropriate cost-of-living adjustment on an annual basis, if such adjustment is determined to be warranted in the court's discretion. Finally, we find no error in the district court's denial of enhancement of the alternative award based on the attorneys' expertise and availability.

For the reasons stated, the judgment of the district court is

VACATED and the cause is REMANDED for further proceedings consistent herewith.

---

limited availability is an essential element of the special expertise factor.