# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 19, 2008

Charles R. Fulbruge III
Clerk

No. 03-11297
Cons. w/06-10393 and 07-10414

UNITED STATES OF AMERICA

Plaintiff - Appellant

v.

MEDICA RENTS COMPANY LTD, Etc; ET AL

Defendants

MEDICA RENTS COMPANY LTD, a Texas Partnership

Defendant - Appellee

---------------------------------------------------------

United States of America, ex rel,
RAMON B CARTER; MICHAEL STOCKHAM

Plaintiffs - Appellants

v.

RICHARD F WALSH, doing business as Medica-Rents Company Ltd, an individual; MEDICA-RENTS COMPANY LTD, a Texas for profit partnership Richard F Walsh General Partner; MED-RCO INC, a Texas for profit corporation Richard F Walsh President

Defendants - Appellees

-----------------------------------------------------------------

No. 03-11297
Cons. w/06-10393 and 07-10414


Cons. w/06-10393

UNITED STATES OF AMERICA

Plaintiff - Appellant

v.

MEDICA-RENTS COMPANY LTD, A Texas Partnership; RICHARD F WALSH; ANNA JEAN KING WALSH; THE AMY SUZANNE WALSH 1987 TRUST; THE ELLEN KING WALSH 1987 TRUST; THE HOLLAND FLEMING WALSH 1987 TRUST; MED-RCO INC, A Texas for profit corporation

Defendants - Appellees

--------------------------------------------------------

Cons. w/07-10414

UNITED STATES OF AMERICA

Plaintiff - Appellant

v.

MEDICA RENTS COMPANY LTD, A Texas Partnership; RICHARD F WALSH; ANNA JEAN KING WALSH; THE AMY SUZANNE WALSH 1987 TRUST; THE ELLEN KING WALSH 1987 TRUST; THE HOLLAND FLEMING WALSH 1987 TRUST; MED RCO INC, A Texas for profit corporation

Defendants - Appellees

--------------------------------------------------------

2

No. 03-11297
Cons. w/06-10393 and 07-10414

RAMON B CARTER, United States of America, ex rel

Plaintiffs

UNITED STATES OF AMERICA, EX REL

Plaintiff - Appellant

v.

RICHARD F WALSH, an individual doing business as Media-Rents Co Ltd; MEDICA-RENTS CO LTD, a Texas for profit partnership Richard F Walsh General Partner; MED-RCO INC, a Texas for profit corporation Richard F Walsh President

Plaintiffs - Appellees

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:00-CV-483

---

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Individual relators and the government appeal the district court's grant of summary judgment to Medica-Rents Co. ("Medica-Rents") on claims under the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA"), and judgment for Medica-Rents after a bench trial on common-law claims, along with the award of

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

3

attorneys' fees.  Appellants' action, both under the FCA and for mistaken payment and unjust enrichment, arose from their contention that Appellees made unjustifiable and fraudulent claims for reimbursement from Medicare for rentals of durable medical equipment.  We affirm the district court's orders rejecting Appellants' FCA and common-law claims.  However, we reverse the district court's award of attorneys' fees.

I.

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395gg, establishes the Health Insurance for the Aged and Disabled Program, commonly known as Medicare.  Medicare provides, among other things, federal government funds to help pay for durable medical equipment for Medicare beneficiaries.  The United States provides reimbursement for Medicare claims for these goods through the Health Care Financing Administration ("HCFA"), which contracts with private insurance carriers to administer, process, and pay claims.  In 1993, the HCFA delegated responsibility for standardizing reimbursement into four regional carriers, called Durable Medical Equipment Regional Carriers ("DMERCs").  Additionally, HCFA created the Statistical Durable Medical Equipment Regional Carrier ("SADMERC") to coordinate the coding decisions of the four DMERCs such that there is country-wide consistency.  HCFA made the DMERC for Region C—Blue Cross/Blue Shield of South Carolina, doing business under the name Palmetto Government Benefits Administrators ("Palmetto")—the SADMERC, as well.

In order for a supplier to obtain reimbursement from HCFA, the supplier must identify its products using a coding system known as the Healthcare Common Procedure Coding System ("HCPCS").  The HCPCS is maintained by

the HCPCS Alpha-Numeric Editorial Panel (the "Panel"), which decides whether a new code should be created for a product or whether the product fits within an existing code. Each HCPCS code used to identify rented durable medical equipment is assigned a monthly reimbursement amount. Each HCPCS code describes a category of products, and each product fitting the description is billed to Medicare under that code. Durable medical equipment that does not match the description of a specific HCPCS code is billed using code E1399, for miscellaneous products, a code that is processed by hand rather than computer.

Medica-Rents rented special mattress overlays called ROHO Dry Flotation Mattress Systems ("ROHOs"). ROHOs are non-powered static surfaces designed to be laid on top of typical hospital mattresses to prevent or relieve patients' bedsores or pressure ulcers. Before HCFA centralized Medicare's durable medical equipment claims by establishing the four regional DMERCs and the SADMERC, Medica-Rents submitted reimbursement claims to the local Medicare carriers in each state where it did business. In November 1992, the Panel determined that ROHOs should be billed under the miscellaneous code E1399. The local Medicare carrier for Louisiana, however, sent Medica-Rents several letters with guidance to bill under code E0277, a more lucrative code that typically applies to more expensive powered mattresses, not mattress overlays. At the same time, other states told Medica-Rents it could not use code E0277 for the ROHOs. At other points multiple contradictory instructions were given to Medica-Rents regarding which code to use.[1]

---

[1] The record is replete with examples of contradictory guidance. By way of example, a Medicare provider in Tennessee advised that ROHOs should be billed under code E0197, the Florida carrier advised using code E0184, Blue Cross/Blue Shield of Arkansas advised using code

After the reorganization, beginning in approximately December 1993, Medica-Rents submitted its claims to Palmetto, the DMERC for Region C. As stated, Palmetto was also the SADMERC responsible for, among other things, pulling together various HCPCS codes used by local carriers for the same products and making them consistent. Just as there had been confusion regarding which code to use before the reorganization, there was confusion regarding which code to use in the transition to the new system and thereafter. For example, Palmetto paid claims submitted under code E0277 until early 1995. At that time, HCPCS was determining whether a new code was necessary for the ROHOs. On February 21, 1995, an HCPCS coordinator for the SADMERC indicated that code E1399 should be used to bill for the ROHO. Medica-Rents complied with this guidance, but continued to lobby for a new code. For the next few months, the claims submitted by Medica-Rents were unpaid. Then, in April 1995 Medica-Rents received contradictory guidance regarding whether it should use code E1399; this confusion culminated when Sharietta Thompson, the Region C DMERC ombudsman for Texas suppliers, informed Medica-Rents that Palmetto was processing the unpaid claims and that "everything should be ok" with code E1399. On June 13, 1995, Medica-Rents followed up with Thompson because the claims submitted under code E1399 remained unpaid. On June 15, 1995, representatives of the SADMERC and the HCPCS coordinators for the DMERCs held a conference call regarding code E0277, and the next day the SADMERC issued a memorandum regarding that call that allowed limited use

---

E0190, Blue Cross/Blue Shield of Alabama advised using code E0197, and Louisiana Medicare Services initially advised using code E1399 and later authorized billing under code E0277 in October 1993.

of code E0277.[2] Then, on June 23, 1995, the SADMERC told Medica-Rents that E1399 was the correct code. On July 11, 1995, the Region C DMERC had a policies-and-procedures meeting to resolve billing and claims processing issues. At that meeting the Region C DMERC decided that low-airloss overlays billed under the code E1399 should be changed to code E0277 to try to determine if there were duplicates in the system. Over the next few days, there were multiple emails between the Region C DMERC and SADMERC regarding whether the ROHOs should be billed under code E0277. Finally, on July 18, 1995, Thompson sent a letter instructing Medica-Rents to use code E0277. A copy of this letter was sent to Sue Pearcy, who worked at the Dallas Regional Office of HCFA. On August 4, 1995, Thompson sent a second letter to Medica-Rents reiterating that the ROHO should be billed under code E0277. The letters were never corrected, altered, withdrawn, or amended.

In 1998, individual relators filed a qui tam action under the FCA against Medica-Rents as well as other named defendants (together, with Medica-Rents, the "Defendants"), alleging that the Defendants had defrauded the federal Medicare program by knowingly over-billing for the ROHOs. The claim was based on the argument that code E1399 should have been used instead of code E0277, and that excess reimbursement had been issued due to improper coding. Two years later, the United States filed a federal common-law action against Medica-Rents for mistaken payment and unjust enrichment based on many of the same underlying facts. The United States then intervened in the FCA case

---

[2] The memorandum stated, in relevant part, that SADMERC had decided to allow suppliers filing low-air-loss products under code E0277 to continue to do so and to allow suppliers filing under code E1399 to begin to file under code E0277 for new claims.

and the two actions were consolidated in the Northern District of Texas for discovery and trial. In September 2003, the district court granted summary judgment for the Defendants on the FCA claims. In January 2006, after a bench trial, the district court ruled in favor of the Defendants on the common-law claims. In January 2007, the district court issued a final order granting the Defendants over $4.8 million in attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## II.

We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." Kona Tech. Corp. v. S. Pac. Transp., 225 F.3d 595, 601 (5th Cir. 2000) (citations omitted). We review a district court's decision to award attorneys' fees for bad faith under the EAJA for abuse of discretion. See Perales v. Casillas, 950 F.2d 1066, 1071 (5th Cir. 1992) (citation omitted).

## III.

## A.

Appellants argue first that the district court erred in granting summary

judgment in favor of the Appellees on the FCA claims. To recover under the FCA the plaintiff must demonstrate: (1) the claimant presented, caused to be presented, or conspired to have presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the claimant knew the claim was false or fraudulent. 31 U.S.C. § 3729. The government argues that Medica-Rents knowingly submitted false or fraudulent claims for payment based on the fact that Medica-Rents used the E0277 code instead of the E1399 code.

Medica-Rents may have used an incorrect billing code, but if it did, it did so at the direction and in compliance with at least one directive from Palmetto, a DMERC and the acting SADMERC. We agree with the district court that there was substantial confusion created by contradictory instructions and guidance before, during, and after the transition to the new DMERC and SADMERC system. In these circumstances, it is unclear that the Defendants' use of code E0277 was erroneous, and we agree with the district court that the evidence does not support a reasonable inference that they knowingly submitted false or fraudulent claims.

## B.

Appellants next argue that the district court erred in rejecting their common-law claims. Under the common-law theory of payment by mistake, the government may "recover money it mistakenly, erroneously, or illegally paid from a party that received the funds without right." LTV Educ. Sys., Inc. v. Bell, 862 F.2d 1168, 1175 (5th Cir. 1989). "[R]ecovery under unjust enrichment is justified when one person obtains a benefit from another by fraud, duress, or the taking of an undue advantage." Heldnefels Bros., Inc. v. City of Corpus Christi,

832 S.W.2d 39, 41 (Tex. 1991).

The government argues that Medica-Rents received higher payments than it deserved for the ROHOs because it submitted claims for payment under code E0277 instead of code E1399. Upon our review of the record, however, and as stated above, Medica-Rents utilized a billing code specifically authorized by Palmetto. Palmetto was the DMERC for Region C and the SADMERC, and we are convinced that the district court did not clearly err in determining that Palmetto had appropriate authority to give this guidance on July 18, 1995. Also, a copy of the July 18, 1995 letter was sent to the regional office of HCFA, which took no steps to correct the guidance. The district court did not err in finding that, under these circumstances, where there was no misconception or misunderstanding regarding the facts and where the government specifically authorized use of code E0277, there can be no mistaken payment. Additionally, because Palmetto specifically authorized use of E0277, there was no fraud, duress, or the taking of an undue advantage necessary to find unjust enrichment.

C.

The government also challenges the district court's award of attorneys' fees. Section 2412(b) of the EAJA permits an award of fees against the government "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). "Section 2412(b) incorporates the 'American rule' for fee-shifting, which permits a fee award only when the losing party acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Perales, 950 F.2d at 1071 (quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116 (1974)) (emphasis omitted).

The district court awarded attorneys fees in part because the "government was aware of the tenuous nature of the case," and "brought claims that were either wholly without evidence (False Claims Act) or could not withstand even a cursory review of the admitted evidence (common-law claims)." United States v. Medica-Rents Co., 2006 WL 3635416, *3 (N.D. Tex. 2006). Upon our review of the record, we are not convinced that the government brought claims that were either wholly unsupported or that were easily dispatched by cursory review of the evidence. The record reflects legitimate confusion on the part of both Medica-Rents and the government before, during, and after the transition to the DMERC and SADMERC system. Although we today affirm the district court's summary judgment and dismissal after bench trial, respectively, the record does not establish bad faith on the part of the government. The district court did not agree with Appellants' arguments, but Appellants did have a nonfrivolous argument regarding which code should have been used and which entities had the authority to issue guidance. We therefore conclude that the district court abused its discretion in awarding attorneys' fees and we must reverse that award.

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment on the FCA claim and the district court's judgment in favor of the Defendants in the common-law claims following a bench trial. However, we reverse the award of attorneys' fees and remand this case to the district court to enter judgment consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.